STACY, J., concurring; CLARKSON, J., concurring, in part.
The chief purpose of this action is to enjoin the defendants from building a highway between Durham and Oxford via Creedmoor. Between thesetermini phere is a public road which passes through the town of Stem, and is now, and for about three years has been, under the control of the State Highway Commission. The former is referred to in the record as the Creedmoor route, and the latter as the Stem route. In 1923 the plaintiffs and others filed with the commissioner of the Fourth District a petition that the Stem route be laid with a hard surface, and in pursuance of such request the commissioners caused both routes to be surveyed. The engineers made reports, and the commissioner finally recommended that the defendants adopt the Creedmoor route as the permanent highway between the two county-seats. After due consideration, the defendants concluded that the Creedmoor route was the "practicable and feasible location," and ordered that it be adopted as the permanent line of the highway, and that maintenance of the Stem route be continued pending the construction of the new road. The plaintiffs subsequently obtained a temporary order restraining the *Page 86 
construction of the Creedmoor route, and the motion to continue it until the final hearing was considered by Judge Sinclair upon complaints filed respectively by the original plaintiffs and by the town of Stem, which was made a party after the action had been brought, the answer of the defendant, the record evidence and several affidavits. After argument, his Honor rendered a formal judgment, vacating the temporary order, and the plaintiffs excepted and appealed, assigning as error the judgment given and his Honor's failure to find the facts upon which the judgment was based.
The second assignment is not sufficient ground for reversal. In the first place, his Honor found such facts as he deemed essential, and embodied them in the judgment. Moreover, in a suit of this nature the appellate court may review the evidence and determine questions of fact as well as of law. Jones v. Boyd, 80 N.C. 258; Mayo v. Comrs., 122 N.C. 5;Hooker v. Greenville, 130 N.C. 472; Hyatt v. DeHart, 140 N.C. 270; Leev. Waynesville, 184 N.C. 565; School Committee v. Board of Education,186 N.C. 643.
The outstanding question is whether there is reversible error in the judgment. The plaintiffs contend that the State Highway Commission is an administrative body, clothed only with such discretionary powers as are essential to the performance of its prescribed duties; that it may change, alter, or discontinue parts of roads to avoid grade crossings and curves, to lessen distance, and generally to take advantage of topographical conditions, but that it is not authorized to abandon a designated road connecting county-seats and build another elsewhere between the sametermini. They insist that the map referred to in the act by which the commission was created contains an outline of the particular roads which the Legislature designated and approved, and that a material departure therefrom would constitute a breach of the spirit and purpose of the law.
In view of these contentions, it becomes necessary to examine both the map and the act to which it is appended. The act was passed in 1921. Public Laws 1921, ch. 2. Its purposes were defined. The State was to lay out, take over, establish, construct, and assume control of certain highways, to make a hard surface for them as rapidly as possible, and to maintain the entire system, the maximum mileage of which was to be approximately fifty-five hundred miles. Sections 2, 3, 4. In section 7 appear also the following provisions: "The designation of all roads comprising the State Highway system, as proposed by the State Highway Commission, shall be mapped, and there shall be publicly posted at the courthouse door in every county in the State a map of all the roads in such county in the State system; and the board of county commissioners or county road-governing body of each county, or street-governing *Page 87 
body of each city or town in the State, shall be notified of the routes that are to be selected and made a part of the State system of highways; and if no objection or protest is made by the board of county commissioners or the county road-governing body of any county, or street-governing body of any city or town in the State, within sixty days after the notification before mentioned, then and in that case the said roads or streets to which no objections are made shall be and constitute links or parts of the State highway system. If any objections are made by the board of county commissioners or county road-governing body of any county, or street-governing body of any city or town, the whole matter shall be heard and determined by the State Highway Commission in session, under such rules and regulations as may be laid down by the State Highway Commission, notice of the time and place of hearing to be given by the State Highway Commission at the courthouse door in the county and in some newspaper published in the county at least ten days prior to the hearing, and the decision of the State Highway Commission shall be final. A map showing the proposed roads to constitute the State Highway system is hereto attached to this bill and made a part hereof. The roads so shown can be changed, altered, added to, or discontinued by the State Highway Commission:Provided, no roads shall be changed, altered or discontinued so as to disconnect county-seats, principal towns, State or National parks or forest reserves, principal State institutions, and highway systems of other states."
By section 10 the commission is vested with certain powers, among which are these: "To take over and assume exclusive control, for the benefit of the State, of any existing county or township roads, and to locate and acquire rights of way for any new roads that may be necessary for a State highway system, with full power to widen, relocate, change, or alter the grade or location thereof; to change or relocate any existing roads that the State Highway Commission may now own or may acquire."
We think it will appear, from a careful reading of these sections, that the roads outlined on the map were intended as a tentative and not as a completed or final system of highways. Road Commissioners v. HighwayCommission, 185 N.C. 56. They were referred to in the act as comprising a system "proposed" by the commission, and again as roads "proposed" for the State Highway system. They were not intended to be unalterable. In section 7 the commission was given express power, subject to limitations, to change, alter, add to, and discontinue roads; and, apparently, with a view to removing all doubt as to the scope of this power in relation to the question under consideration, it was vested with the specific right "to change or relocate any existing roads that it *Page 88 
may now own or may acquire." These definite and significant provisions convince us that the map cannot reasonably be accepted as a legislative fiat to construct a system of highways in strict conformity with the roads "proposed," and that the roads may be changed, altered, relocated, and discontinued in the sound discretion of the commission, subject to the limitations prescribed by law.
What are these limitations? The defendants contend that constructing, changing, relocating, and discontinuing highways are matters peculiarly within their discretion and are not subject to judicial review, except in case of abuse. In Road Commission v. Highway Commission, supra, it was said that the Highway Commission is an administrative body; and, as suggested in the defendant's brief, it has been held, in an unbroken line of decisions extending over more than half a century, that the courts may not control the discretion exercised by a local administrative board unless its action is so clearly unreasonably as to amount to oppressive and manifest abuse. We adhere to this doctrine. We accede to the answer implied in the question, "Who made us judges over such matters?" Supervisors v. Comrs.,169 N.C. 548. We do not controvert the proposition that the defendants are clothed with certain discretionary powers; but, as we interpret the act, these powers do not include changing, altering, or discontinuing all roads in the exercise of a discretion which can be reviewed only in case of oppression or bad faith. We think the changing, the alteration, or the discontinuance by the defendants of the roads defined in the proviso of section 7 is subject to judicial review, without regard to the question of an abuse of discretion. The terms of the proviso are positive and mandatory, and not uncertain or discretionary. Section 7 provides that the roads shown on the map may be changed, altered, added to, or discontinued by the commission. Nothing else appearing, this clause would probably be construed as conferring powers to be exercised in the discretion of the defendants; but immediately following are the words: "Provided, no roads shall be changed, altered, or discontinued so as to disconnect county-seats, principal towns, State or National parks or forest reserves, principal State institutions, and highway systems of other states."
One of the functions of a proviso is to qualify or restrain some preceding matter, or to exclude some possible ground of misinterpretation of it as extending to cases which the Legislature did not intend to bring within its purview. 25 R. C. L., 984, sec. 231; Potter's Dwarris on Statutes, 118 et seq.; Supply Co. v. Eastern Star Home, 163 N.C. 513. As we understand it, the very purpose of this proviso was to exclude the construction that, as to the roads therein described, the defendants should have the discretionary power upon which they now insist. In the exercise of a legal discretion they may determine whether a road *Page 89 
shall be changed, altered or discontinued if they observe the mandate of the proviso. But this mandate must be observed; and if it be granted that county-seats, State parks, National parks, and forest reserves may be identified ex vi termini, it is not so with respect to "principal towns" or "principal State institutions." As there is no recognized technical definition of "principal towns," we are of opinion that the Legislature used these words in a broad sense, to be determined by the conditions relatively appearing in each particular case, and in this sense they are the subject of judicial determination. This construction is essential to uniformity of decision, which would be defeated if the question were left entirely to the discretionary judgment of the commission. To hold with the defendants that the right to determine what are principal towns is to be referred to the commission itself, and that their action is final, except in case of manifest abuse, would be the proper interpretation of the act if there had been no proviso. It is clear, therefore, that the Legislature was not willing to confer such extended power on the commission, but inserted the proviso with the view and purpose of making the decision as to what are principal towns within the meaning of the act a mixed question of law and fact, subject to judicial review as it ordinarily prevails in such cases. A contrary ruling would be to deprive the proviso, evidently intended as an important feature of the law, of any and all significance. Of course, section 7 and section 10, being in pari materia, must be construed together.
Our conclusion is not at variance with the decision in Peters v. HighwayCommission, 184 N.C. 30, or Road Commission v. Highway Commission, supra. The former concerned a local act, and in the latter the construction of the proviso in section 7 was neither presented nor discussed.
The plaintiffs contend that the name of Stem appears on the map, indicating the route which they advocate, and that Stem is therefore a "principal town." We have disapproved this construction and have concluded, after a critical examination of the record, that Stem is not a principal town, within the meaning of the act.
It is further insisted on behalf of the plaintiffs that if Stem is not a principal town, and if the defendants exercised discretionary power which was not in conflict with the proviso, they acted oppressively or in bad faith. We do not concur. The defendants came to their conclusion after a patient hearing and a personal inspection of the proposed routes, and were impelled, as they declared, by their judgment as to "the best interest of the State."
The plaintiffs finally contend that land has been bought and homes have been built along the Stem route, and that while no vested rights have accrued, the adoption of the Creedmoor route was the determination *Page 90 
of a public matter, which was void, in the absence of due process of law. No authority for the position is cited. Indeed, the plaintiffs have been given every reasonable opportunity to be heard in the courts, and their position and briefs have been duly considered. Those who have built homes or purchased property on the Stem route since the act of 1921 became effective have done so with constructive notice of the powers conferred upon the highway commission.
While we do not concur in his Honor's intimation that the powers conferred upon the defendants are altogether discretionary, we approve the result and affirm the judgment.
Affirmed.