SCOTT D. BURGESS v. YOUR HOUSE OF RALEIGH, INC.

No. 235PA89

(Filed 7 February 1990)

1. **Rules of Civil Procedure § 12 (NCI3d) — motion to dismiss — failure to state claim for relief**

A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts

to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim.

**Am Jur 2d, Pleading § 226.**

2. **Statutes § 5.1 (NCI3d)— statutory construction—intent of legislature**

Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning. But where a statute is ambiguous, judicial construction must be used to ascertain the legislative will.

**Am Jur 2d, Statutes §§ 145, 146, 194, 195.**

3. **Master and Servant § 7.5 (NCI3d)— Handicapped Persons Act—inapplicability to person infected with AIDS virus**

A person who is infected with the AIDS virus (HIV), but who is otherwise asymptomatic, is not entitled to employment protection under the provisions of the N. C. Handicapped Persons Act because (1) a person infected with HIV is not a "handicapped person" within the meaning of the Act in that he does not have a physical or mental impairment which limits a "major life activity" as that term is defined by N.C.G.S. § 168A-3(4), nor is he regarded as having such an impairment; (2) the legislature did not intend that the definition of "handicapped person" would include a person solely because he suffers from a communicable disease since such an interpretation would render meaningless the communicable disease exemption of N.C.G.S. § 168A-5(b)(3); and (3) subsequent legislative history indicates that the legislature did not intend to cover the subject of communicable diseases such as HIV when it enacted the Handicapped Persons Act.

**Am Jur 2d, Job Discrimination § 124.**

ON discretionary review pursuant to N.C.G.S. § 7A-31(a) prior to a determination by the Court of Appeals of an order entered by *Herring, J.*, at the 27 November 1988 Session of Superior Court, WAKE County, which granted defendant's motion for dismissal pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Heard in the Supreme Court 13 November 1989.

## BURGESS v. YOUR HOUSE OF RALEIGH

[326 N.C. 205 (1990)]

*Erdman, Boggs & Harkins, by Harry H. Harkins, Jr., and Crisp, Davis, Schwentker, Page & Currin, by Lynn Fontana, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Richard T. Boyette, and Moore & Van Allen, by William D. Dannelly, for defendant-appellee.*

*Tharrington, Smith & Hargrove, by Burton Craige, for North Carolina Civil Liberties Union Legal Foundation; and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Julian D. Bobbitt, Jr. and Maureen Kelley O'Connor, for North Carolina Medical Society and American Medical Association, amici curiae.*

MEYER, Justice.

We note from the outset that the issues raised in this case would, if the action had been commenced after the effective date of recent amendments to the North Carolina Communicable Disease Act, N.C.G.S. § 130A-148(h)-(j) (1989), be decided under that act. These provisions, which establish protections for those persons who test positive for the HIV virus, became effective 1 October 1989, subsequent to the filing of plaintiff's complaint and to entry of the order of the trial court granting defendant's motion for dismissal. Thus, for purposes of this appeal, plaintiff's rights must be determined under the law as it existed prior to the passage of the recent amendments to the Communicable Disease Act.

Plaintiff was employed by defendant restaurant as a short-order cook. In November 1987, plaintiff tested positive for the Human Immunodeficiency Virus (HIV), which is the agent currently recognized to be responsible for the Acquired Immune Deficiency Syndrome (AIDS). This condition is referred to as being "seropositive" for the virus. Upon learning that plaintiff had tested positive for this virus, defendant discharged plaintiff from employment. It is undisputed that plaintiff was fired solely because he tested positive for HIV. Plaintiff brought suit against his former employer, alleging that his discharge from employment for this reason constituted a discriminatory practice under the provisions of the North Carolina Handicapped Persons Protection Act, N.C.G.S. § 168A-1 to -12 (1987) (Handicapped Persons Act), because plaintiff's seropositive status enabled him to fit the act's definition of a qualified handicapped person. In his prayer for relief, plaintiff sought injunctive relief, reinstatement to his former position, back pay, and

BURGESS v. YOUR HOUSE OF RALEIGH

[326 N.C. 205 (1990)]

attorney's fees. Defendant answered, denying plaintiff's assertion that infection with HIV constitutes a "handicap," and further moved to dismiss plaintiff's complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief could be granted. The trial court granted defendant's motion, and plaintiff appealed to the Court of Appeals. On 8 June 1989, this Court *ex mero motu* allowed discretionary review prior to determination by the Court of Appeals.

AIDS may be described as the final stage of complications of infection by the Human Immunodeficiency Virus. Once introduced into the body, the HIV virus attacks and changes the structure of white blood cells which are crucial in order for a person's immune system to fight off disease. Leonard, *AIDS and Employment Law Revisited*, 14 Hofstra L. Rev. 11, 17-18 (1985). Soon after infection, antibodies to the virus develop. The infected white blood cells, unable to perform their normal immune system functions, reduce the body's capability to fight off opportunistic disease or render it incapable of doing so. *Id.* The debilitating effects of AIDS come, not from the virus itself, but from these opportunistic diseases that the immune system cannot fight.

The HIV virus is known to be transmitted through blood or semen during sexual intercourse, by contaminated intravenous needles, by the transfusion of tainted blood, and through prenatal exposure. As of April 1989, more than 94,000 cases of AIDS had been reported in the United States, and of that number, 820 had been reported in North Carolina. U.S. Centers for Disease Control, *HIV/AIDS Surveillance Report* (May 1989). The United States Centers for Disease Control estimates that the number of new cases in 1991 alone will exceed 52,000, and it projects a cumulative total of 270,000 cases by the year 1991. Padraig O'Malley, *The AIDS Epidemic: Private Rights and the Public Interest* (1989). AIDS has presented a myriad of legal issues, particularly in the employment context. Much debate has focused on the threshold question of whether AIDS or infection with the HIV virus should be defined as a handicap under either state or federal handicap antidiscrimination statutes. "One of the medical facts which makes AIDS a significant workplace issue is that a person may experience HIV infection in its various stages and be virtually asymptomatic, or have symptoms which . . . are not actually disabling." Leonard, *AIDS and Employment Law Revisited*, 14 Hofstra L. Rev. 11, 19 (1985).

## BURGESS v. YOUR HOUSE OF RALEIGH

[326 N.C. 205 (1990)]

[1] The central issue before this Court is whether a person who is infected with HIV, but who is otherwise asymptomatic, is entitled to protection under the provisions of the North Carolina Handicapped Persons Act, and specifically whether plaintiff has stated a claim upon which relief can be granted under the act. In ruling upon a Rule 12(b)(6) motion, the trial judge must treat the allegations of the complaint as admitted. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979). Plaintiff's complaint therefore stated a proper cause of action under the act unless the court could hold, as a matter of law, that his seropositive status did not constitute a handicap as contemplated by the statute. A complaint may be dismissed pursuant to Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim. *Forbis v. Honeycutt*, 301 N.C. 699, 273 S.E.2d 240 (1981).

[2] In order to determine whether plaintiff has alleged a good claim, we must interpret the provisions of the Handicapped Persons Act. Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning. *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 232 S.E.2d 184 (1977). But where a statute is ambiguous, judicial construction must be used to ascertain the legislative will. *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E.2d 797 (1948). The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent. *Buck v. Guaranty Co.*, 265 N.C. 285, 144 S.E.2d 34 (1965). This intent "must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied." *Milk Commission v. Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967). Upon careful and thorough analysis of the Handicapped Persons Act, we conclude that both the plain language of its provisions and the legislative history surrounding it indicate that the legislature did not intend to protect persons infected with HIV under this particular act.

For many decades, North Carolina has adhered to the employment-at-will doctrine, which provides that "[w]here a contract of employment does not fix a definite term, it is terminable at the will of either party, with or without cause." *Smith v. Ford Motor Co.*, 289 N.C. 71, 80, 221 S.E.2d 282, 288 (1976) (citing *Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971)). This doctrine has

recently been narrowly eroded by statutory and public policy limitations on its scope. *See, e.g., Coman v. Thomas Manufacturing Co.,* 325 N.C. 172, 381 S.E.2d 445 (1989); *Sides v. Duke University,* 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied,* 314 N.C. 331, 333 S.E.2d 490 (1985). The North Carolina Handicapped Persons Act is a statutory enactment intended to protect handicapped employees from discriminatory employment practices. In the act's statement of purpose, the legislature provides that:

> The purpose of this Chapter is to encourage and enable all handicapped people to participate fully to the maximum extent of their abilities in the social and economic life of the State, to engage in remunerative employment, to use available public accommodations and public services, and to otherwise pursue their rights and privileges as inhabitants of this State.

N.C.G.S. § 168A-2(a) (1987).

We recognize that the Handicapped Persons Act is a remedial statute. *Burgess v. Brewing Co.,* 298 N.C. 520, 259 S.E.2d 248 (1979). Nevertheless, our interpretation of this act must be responsive to two countervailing considerations — the desire to give effect to the statutory objectives and the need to keep the scope of the act within the boundaries intended by the General Assembly.

[3] In order to state a cause of action for violation of the right to employment protected by the act, plaintiff must initially establish that he is a "handicapped person" whose rights are protected by the statute. The Handicapped Persons Act defines a "handicapped person" as one who (1) has a physical or mental impairment which limits one or more "major life activities," (2) has a record of such an impairment, or (3) is regarded as having such an impairment. N.C.G.S. § 168A-3(4) (1987). In order to receive employment protection under the act, a person must additionally fit the definition of a "qualified handicapped person":

> With regard to employment, a handicapped person who can satisfactorily perform the duties of the job in question, with or without reasonable accommodation, . . . provided that the handicapping condition does not create an unreasonable risk to the safety or health of the handicapped person, other employees, the employer's customers, or the public[.]

N.C.G.S. § 168A-3(9)(a) (1987).

**BURGESS v. YOUR HOUSE OF RALEIGH**

[326 N.C. 205 (1990)]

Plaintiff contends that he has alleged facts sufficient to show that he qualifies not only as a "handicapped person" under the act, but also as a "qualified handicapped person" because his HIV infection does not pose a risk to others in the workplace setting. For the reasons set out below, we hold that plaintiff has failed to show that infection with HIV entitles him to protection as a "handicapped person" as that term is defined by the act. Since plaintiff cannot make this threshold showing, we need not examine the additional issue of whether plaintiff is a "qualified handicapped person" as defined by the act.

We further hold that because plaintiff's alleged handicap is a communicable disease, he is not protected under the Handicapped Persons Act because the act contains a provision exempting communicable diseases from protection as handicaps.

Plaintiff asserts that, in interpreting the provisions of our act, we may utilize decisions of other state courts construing similar antidiscrimination statutes which have been enacted in other jurisdictions. To date, forty-seven states and the District of Columbia have enacted statutes prohibiting employment discrimination on the basis of disability or handicap. Few of these statutes have specifically addressed whether HIV, or communicable diseases in general, are to be included within the definition of "handicap," but plaintiff asserts that the trend among courts construing these acts has been to grant protection to persons infected with HIV. *See, e.g., Raytheon Co. v. Fair Emp. & Housing Com'n.*, 261 Cal. Rptr. 197, 212 Cal. App. 3d 1242 (1989); *Cronan v. New England Tel. & Tel. Co.*, 41 Fair Empl. Prac. Cas. (BNA) at 1273 (Sup. Ct. Mass. 1986). We have examined the various statutes and have discovered that there is little uniformity among them and minimal case law interpreting their scope. *See* Parry, *AIDS as a Handicapping Condition—Part II*, 10 Mental & Physical Disability L. Rep. 2, 4 (1986). Because of this lack of uniformity and because of differences we have discerned in their wording and purpose as compared to the North Carolina act, we conclude that case law from other jurisdictions is of little value to us in our interpretation of the North Carolina act.

Plaintiff also requests that we utilize and follow judicial interpretations of the North Carolina act's federal counterpart, the Rehabilitation Act of 1973, 29 U.S.C. 794, in construing the provisions of the North Carolina act. We concede that the definitions

BURGESS v. YOUR HOUSE OF RALEIGH

[326 N.C. 205 (1990)]

of "handicapped person" and "qualified handicapped person" in the North Carolina Handicapped Persons Act are virtually identical to the definitional provisions of the federal act and that, in fact, the North Carolina act was patterned after the federal act. Because of these similarities, plaintiff requests that we rely upon cases construing the federal act that tend to support his point of view, that is, that communicable diseases such as AIDS and its related conditions are handicaps, and consequently to decide this case in his favor. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 94 L. Ed. 2d 307, *reh'g denied*, 481 U.S. 1024, 95 L. Ed. 2d 519 (1987) (schoolteacher suffering from a communicable disease — tuberculosis — held to be protected under federal act).[1] However, in construing the intent of our legislature in enacting the North Carolina Handicapped Persons Act, it is important to note that two significant provisions distinguish our state act from the federal act. First, the North Carolina act has a more restrictive definition of a "handicapped person" in that it defines "major life activities" more narrowly than the federal act defines the term. Second, North Carolina's act contains a communicable disease exemption which is absent from the federal act. These differences lead us to conclude that case law construing the provisions of the federal Rehabilitation Act cannot guide us in our interpretation of the North Carolina act.

---

1. In that case, the federal act's inclusion of the term "working" as a "major life activity" was a significant factor in the United States Supreme Court's holding that a limitation on an individual's ability to work as a result of the negative reactions of others to an impairment, even though it did not impair that person's physical and mental capabilities, was discrimination of the type which Congress intended to protect against in the Rehabilitation Act. However, the Court expressly declined to consider the question of whether a person infected with a contagious disease such as HIV could be considered a "handicapped person" solely because of the contagious disease. In this case, the plaintiff had a record of physical disability in addition to having a contagious disease.

In response to this unanswered question, the Rehabilitation Act was amended in March 1988 by the Civil Rights Restoration Act to clarify the application of the Rehabilitation Act's definition of "individual with handicaps" with respect to communicable diseases. The amendment provides that the term "individual with handicaps"

> does not include an individual who has a currently contagious disease or infection and who, by reason of such disease or infection, would constitute a direct threat to the health or safety of other individuals or who, by reason of the currently contagious disease or infection, is unable to perform the duties of the job.

29 U.S.C. § 706(8)(C) (Cum. Supp. 1989).

### BURGESS v. YOUR HOUSE OF RALEIGH

[326 N.C. 205 (1990)]

The first distinguishing characteristic is the difference in the federal act and the North Carolina act in defining the term "major life activities." As we stated above, both acts define a "handicapped person" as a person who (1) has a physical or mental impairment which limits one or more "major life activities," (2) has a record of such an impairment, or (3) is regarded as having such an impairment. N.C.G.S. § 168A-3(4) (1987). Major life activities are defined in N.C.G.S. § 168A-3(4)(b) as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, and learning."

As an initial matter, we note that the parties are in agreement that plaintiff has a physical impairment in that he has a viral infection that affects his hemic and lymphatic systems. Defendant disagrees, however, with plaintiff's assertion that he has, or is regarded as having, a physical impairment *which limits a "major life activity."* Plaintiff contends that his ability to work has been impaired by the fact that he was not permitted to continue his employment with defendant after it was determined that he was infected with HIV, and that he therefore fits within the definition of a "handicapped person" because he is regarded as having an impairment that limits a major life activity, "working." Plaintiff claims that the negative perception of others renders him a "handicapped person" within the meaning of the act. He concludes that this Court should incorporate the term "working" into the North Carolina act's definition of "major life activities" because, by its terms, the list of functions is illustrative rather than exhaustive.

We note that the federal act, unlike the North Carolina act, does indeed list "working" as one of the major life activities that may be found to have been limited by a physical or mental impairment. However, the drafters of the North Carolina act specifically removed the term "working" from the senate bill as originally enacted. *See* S. 272, Committee Substitute (adopted 30 May 1985). The specific exclusion of "working" from this list is significant because it is the only activity listed by the federal act that was not included in our state act. As this Court has recognized, "by modifying the language borrowed from [a] federal act, the North Carolina legislature must have intended to alter its meaning to some extent." *Edmisten, Attorney General v. Penney Co.*, 292 N.C. 311, 316, 233 S.E.2d 895, 898 (1977). The deletion of the term "working" is some indication that the General Assembly intended for the Handicapped Persons Act to be more narrow in scope than

its federal counterpart. Plaintiff concedes that his ability to perform his usual work at the defendant restaurant is not actually impaired by his HIV infection. He is in fact asymptomatic. As an asymptomatic carrier of HIV, plaintiff has failed to show that he has any condition that would substantially limit his ability to perform any of the physical or mental tasks listed in the Handicapped Persons Act as major life activities.

Plaintiff additionally argues that infection with HIV is a physical impairment which limits other activities which he contends are "major life activities" — his ability to bear a healthy child and his ability to engage in sexual relationships for fear of transmitting the virus. Because he has a physical impairment which limits one or more "major life activities," plaintiff argues, he qualifies under the Handicapped Persons Act's first definition of a "handicapped person," as set out above. We disagree with plaintiff's assertion that these limitations fall within the scope of the act's definition of "major life activities." The activities plaintiff enumerates are not of the same nature as those listed in the statute, that is, essential tasks one must perform on a regular basis in order to carry on a normal existence.

In sum, we conclude that plaintiff has failed to meet his burden of showing that he is a "handicapped person" as defined by the North Carolina act because he does not have a physical or mental impairment which limits a "major life activity," as that term is defined by our statute, nor is he regarded as having such an impairment. Because he does not qualify as a "handicapped person" under the act, he necessarily cannot qualify as a "qualified handicapped person" because that definition assumes, as an initial matter, that one is handicapped.

The second set of provisions which distinguishes the North Carolina act from the federal act consists of a series of exemptions to the North Carolina act, one of which provides that it is not a discriminatory action for an employer to discharge a handicapped person "because the person has a communicable disease which would disqualify a non-handicapped person from similar employment." N.C.G.S. § 168A-5(b)(3) (1987). As an initial matter, we note that it is undisputed that plaintiff suffers from a communicable disease. "Although a seropositive person does not show symptoms of . . . AIDS, and may never develop such symptoms, he or she does carry the virus and can transmit it to others." Green, *The Transmis-*

### BURGESS v. YOUR HOUSE OF RALEIGH

[326 N.C. 205 (1990)]

*sion of AIDS*, AIDS and the Law: A Guide for the Public 28, 30 (1987). Plaintiff contends that it is the negative perceptions of others, rather than the fact that he has HIV, that render him a "handicapped person" under the statute. However, we recognize that it is in fact plaintiff's infection which produces the negative perceptions. Thus, in the final analysis, it is the infection itself which plaintiff contends constitutes his handicap.

Although the Handicapped Persons Act, as we have noted above, does define the terms "handicapped person" and "qualified handicapped person," it does not define what constitutes a "handicap." It is therefore a matter of statutory interpretation as to whether the term incorporates communicable diseases within its ambit. To resolve this ambiguity, we must construe the language in question in light of the applicable canons of statutory construction. The intent of the legislature controls the interpretation of a statute. *Realty Co. v. Trust Co.*, 296 N.C. 366, 250 S.E.2d 271 (1979). "A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 295 (1975). To this end, the words and phrases of a statute must be interpreted contextually, in a manner which harmonizes with the other provisions of the statute and which gives effect to the reason and purpose of the statute. *In re Hardy*, 294 N.C. 90, 240 S.E.2d 367 (1978); *State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (1972).

Proper application of the above principles of statutory interpretation compels us to conclude that our legislature did not intend that the definition of "handicapped person" would include a person solely because he suffers from a communicable disease. The act specifically provides that an employer *may* discharge a handicapped person if "the person has a communicable disease *which would disqualify a non-handicapped person* from similar employment." N.C.G.S. § 168A-5(b)(3) (1987) (emphasis added). There are two aspects to the exemption: (1) that the person has a communicable disease, and (2) that the communicable disease itself would disqualify a non-handicapped person. The exemption means that the existence of a communicable disease is to be treated as a basis for exemption from the application of the act if it would disqualify a non-handicapped person. The person suffering from the communicable disease must have an additional disability which qualifies as a handicap. Nothing else constituting a handicap has been shown here.

Carrying this analysis one step further, we conclude that the legislature did not intend for a communicable condition itself to be a protected handicap because such an interpretation would render the communicable disease exemption meaningless. "[A] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage." *Jolly v. Wright*, 300 N.C. 83, 86, 265 S.E.2d 135, 139 (1980) (citations omitted).

Such an interpretation would additionally be absurd. If one removes the words "communicable disease" in the provision and replaces them with the word "handicap," so that the exemption reads, "[i]t is not a discriminatory action for an employer . . . to discharge a handicapped person because the person has a [handicap] which would disqualify a non-handicapped person from similar employment," the provision would make no sense, because one cannot, by definition, simultaneously be both handicapped and non-handicapped. A statute is presumed not to have been intended to produce absurd consequences, but rather to have the most reasonable operation that its language permits. *Cameron v. Highway Com.*, 188 N.C. 84, 123 S.E. 465 (1924). Our reading of the statute harmonizes the communicable disease exemption with the remaining provisions of the Handicapped Persons Act and gives full effect to the reason and purpose of the statute.

Our interpretation of the plain language of the statute is bolstered by subsequent legislation on this subject. Legislative history is a factor to consider in determining legislative intent. *Milk Commission v. Food Stores*, 270 N.C. 323, 154 S.E.2d 548. Courts may use subsequent enactments or amendments as an aid in arriving at the correct meaning of a prior statute by utilizing the natural inferences arising out of the legislative history as it continues to evolve. *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135; *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E.2d 481 (1968); *Cab Co. v. Charlotte*, 234 N.C. 572, 68 S.E.2d 433 (1951). The subsequent legislative history on this subject consists of a series of efforts to enact AIDS-specific antidiscrimination provisions, an endeavor which ultimately resulted in the passage of a bill rewriting portions of the North Carolina Communicable Disease Act, N.C.G.S. § 130A-148(h)-(j) (1989 N.C. Sess. Laws ch. 698, effective 1 October 1989). While we recognize that plaintiff is not protected by this act because plaintiff's action was filed and the order of dismissal was entered before the pertinent amendments became effective,

**BURGESS v. YOUR HOUSE OF RALEIGH**

[326 N.C. 205 (1990)]

we may nevertheless examine these subsequent legislative efforts in an attempt to derive the scope and purpose of the earlier legislation. The 1989 amendments to the Communicable Disease Act do not repeal, expressly or by implication, any of the provisions of the earlier Handicapped Persons Act. They deal with a subject that was not intended to be covered by the earlier legislation.

The Handicapped Persons Act was enacted into law in 1985. In the 1987 session, the North Carolina General Assembly amended the Communicable Disease Act. One of the proposed amendments, which was embodied in House Bill 458, contained an anti-discrimination provision specifically designed to protect individuals infected with HIV:

> Except as provided in subsection (h), no test or test result for AIDS virus infection shall be required, performed or utilized to determine suitability for employment, housing or public services, or for the use of places of public accommodation, . . . or public transportation.

H.R. 458 § 16(f), Committee Substitute (19 May 1987).

House Bill 458 passed the House and was sent to the Senate. A subcommittee of the Senate Committee on Human Resources proposed a substitute which deleted the above antidiscrimination provisions. *See* H.R. 458, Committee Substitute (adopted 1 July 1987).

The Committee on Human Resources approved and sent to the Senate floor a Committee Substitute for House Bill 458 which would have amended N.C.G.S. § 168A-3(4) (the Handicapped Persons Act) to include in the definition of the term "physical or mental impairment," "any communicable disease or communicable condition," and which would additionally have repealed N.C.G.S. § 168A-5(b)(3), the communicable disease exemption. *See* H.R. 458 § 16(h), Senate Committee Substitute (adopted 30 July 1987). This proposed amendment was not adopted.

As a result, the final bill, which was enacted as chapter 782 of the 1987 Session Laws, contained neither the House antidiscrimination provisions nor the Senate subcommittee amendments. This legislative history demonstrates that the General Assembly specifically addressed the particular question at issue here and affirmatively chose not to include persons infected with the HIV virus within the scope of the Handicapped Persons Act.

BURGESS v. YOUR HOUSE OF RALEIGH

[326 N.C. 205 (1990)]

Those persons discriminated against on the basis of AIDS infection remained unprotected under North Carolina law until the 1989 session of the General Assembly. The legislature enacted Senate Bill 282 (1989 N.C. Sess. Laws ch. 698), which *rewrote* sections of N.C.G.S. § 130A-148, the Communicable Disease Act. These new provisions, which became effective 1 October 1989, contain a comprehensive AIDS antidiscrimination provision.

The new law specifically prohibits discrimination in continued employment of an infected employee, but further provides that an employer will not be prohibited from denying employment *to* an applicant if that applicant tests positive for the AIDS virus. N.C.G.S. § 130A-148(i)(2) (1989). It further permits an employer to take "appropriate employment action, including reassignment or termination of employment," if continued employment would "pose a significant risk to the health of the employee, co-workers, or the public, or if the employee is unable to perform the normally assigned duties of the job." N.C.G.S. § 130A-148(i)(4) (1989). Chapter 698, section 2 of the 1989 Session Laws specifically exempts restaurants altogether from the discrimination in continued employment provisions of the new law until 1 July 1991, at which time the general provisions of the act become applicable to restaurants.

The new legislation represents a specific, comprehensive declaration of the extent to which AIDS infection may affect employment decisions. It is the product of extensive efforts to balance the interests of the infected employee with the concerns, whether legitimate or illusory, of employers faced with the perceived risk of liability as a result of employing a person with the HIV virus.

It is apparent that our legislature did not intend to cover the subject of communicable diseases such as HIV when it passed the Handicapped Persons Act. The General Assembly will undoubtedly continue to wrestle with the legal dilemma presented by the AIDS controversy. The legislature provides a uniquely appropriate forum for the evaluation of these issues. As of the time of the filing of plaintiff's complaint and the entry of the order of dismissal, the statutory protections now being afforded simply did not exist. Courts may not extend a statute to cover cases not within its scope or purpose, however meritorious they may be. *State v. Ingle,*

214 N.C. 276, 199 S.E. 10 (1938). We affirm the order of the trial court granting defendant's motion for dismissal.

Affirmed.