Puckett v. KPMG, LLP, 2006 NCBC 19

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04 CVS 11289

STEPHEN R. PUCKETT, BETH W. PUCKETT, )
And P IV LIMITED PARTNERSHIP, )
            )
     Plaintiffs, )
            )
  v.           )
            )     ORDER
KPMG, LLP, WILLIAM L. SPITZ, )
WACHOVIA BANK, N.A., successor by merger )
to FIRST UNION NATIONAL BANK, N.A., QA )
INVESTMENTS, LLC, and QUELLOS GROUP, )
LLC, )
            )
     Defendants. )

*Taylor, Penry, Rash & Riemann, P.L.L.C. by J. Anthony Penry and Rudolf, Widenhouse & Fialko, P.A. by David S. Rudolf for Plaintiffs Stephen R. Puckett, Beth W. Puckett, and P IV Limited Partnership.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by James C. Adams, II, Clinton R. Pinyan, and James T. Williams, Jr. for Defendant KPMG, L.L.P.*

*James, McElroy & Diehl, P.A. by Edward T. Hinson, Jr. for Defendant William L. Spitz.*

*Robinson, Bradshaw & Hinson, P.A. by Robert W. Fuller and Katherine G. Maynard for Defendant Wachovia Bank, N.A.*

*Parker, Poe, Adams, & Bernstein, L.L.P. by Deborah L. Edney and William L. Rikard for Defendants QA Investments, L.L.C. and Quellos Group, L.L.C.*

Diaz, Judge.

{1} The Court heard this matter on 5 September 2006, on the Plaintiffs' Motion to Amend and Supplement Complaint (the "Motion"). The Motion seeks to expound on the facts alleged in the Complaint and also seeks to add two additional claims for relief alleging conversion (Plaintiffs' proposed Tenth Claim for Relief) and a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim pursuant to Chapter 75D of the North Carolina General Statutes (Plaintiffs' proposed Eleventh Claim for Relief).

{2} After considering the Motion, the Court file, the briefs submitted by the parties, and the arguments of counsel, the Court will **DENY** that portion of the Motion seeking to add a RICO claim under state law

but will otherwise **GRANT** the requested relief. Plaintiffs shall serve their Amended Complaint within fifteen (15) days of the entry of this Order.

## I.

## PROCEDURAL & FACTUAL BACKGROUND

{3}     Plaintiffs Stephen R. Puckett, Beth W. Puckett, and P IV Limited Partnership filed their original Complaint (the "Complaint") on or about 25 June 2004.   The Defendants removed the case to federal court, where it remained for almost two years pending a ruling on Plaintiffs' motion to remand.  By agreement of the parties, the case was remanded to Mecklenburg County state court in April 2006, where it was subsequently designated as an exceptional case and assigned to me.

{4}     Defendant William L. Spitz answered the Complaint on 5 August 2004.

{5}     Defendant Wachovia Bank, N.A., filed its answer to the Complaint in federal court on 4 March 2005.

{6}     No other Defendant has answered the Complaint, as the parties have agreed to toll the period for the remaining Defendants to answer until a ruling on the Motion.

## A.
## THE PARTIES

{7}     Plaintiff Stephen R. Puckett is a citizen and resident of Mecklenburg County, North Carolina. (Compl. ¶ 1.)

{8}     Plaintiff Beth W. Puckett is a citizen and resident of Mecklenburg County, North Carolina. (Compl. ¶ 2.)

{9}     Plaintiff P IV Limited Partnership ("P IV") is a limited partnership organized under the laws of the State of North Carolina, with its principal place of business in Mecklenburg County, North Carolina. (Compl. ¶ 3.)

{10}    Defendant KPMG, L.L.P. ("KPMG") is an international accounting and consulting firm organized under the laws of Delaware, with its principal place of business in New York City, New York.  (Compl. ¶ 4.)  KPMG does substantial business in North Carolina.  (Compl. ¶ 4.)

{11}    Defendant William L. Spitz ("Spitz") is a citizen and resident of Mecklenburg County, North Carolina.  Plaintiffs allege that Spitz was, at all relevant times, a partner at KPMG and a certified public accountant in North Carolina.  (Compl. ¶ 5.)

{12}    Defendant Wachovia Bank, N.A., is a national banking association with its principal place of business in Mecklenburg County, North Carolina, and is the successor by merger to First Union National

Bank, N.A.  (Compl. ¶ 6.)

{13}   Defendant QA Investments, LLC ("QA") is a Delaware limited liability company with its principal place of business in Seattle, Washington.  (Compl. ¶ 7.)

{14}   Defendant Quellos Group, LLC ("Quellos") is a Delaware limited liability company with its principal place of business in Seattle, Washington.  Plaintiffs allege that Quellos is the parent company of QA and exercised complete dominion and control over QA with respect to the transactions alleged in the Complaint.  (Compl. ¶ 8.)

## B.

## SUMMARY OF THE FACTS

{15}   The claims in this case arise out of certain investment strategies allegedly devised by the Defendants to create tax shelters that Plaintiffs (and others similarly situated) utilized to offset multi-million dollar capital gains on their tax returns.  (Am. Compl. ¶¶ 16-20.)

{16}   In their proposed Amended Complaint (the "Amended Complaint") Plaintiffs contend that, in 1998, the Defendants solicited them to implement a series of securities purchases and sales (commonly known as a Foreign Leveraged Investment Program ("FLIP") that Defendants represented would generate large tax losses and deductions that could then be used to offset Plaintiffs' gains from the sale of certain shares in a business.  (Am. Compl. ¶¶ 16-20, 22-25.)

{17}   Plaintiffs also allege that one or more of the Defendants falsely assured them that the proposed tax strategies complied with all tax regulations.  (Am. Compl. ¶ 25.)

{18}   Based on these alleged assurances, Plaintiffs authorized three separate wire transfers to the Defendants totaling $1.8 million to fund the various securities purchases and related structuring and advisory fees.  (Am. Compl. ¶ 37.)

{19}   Plaintiffs allege that a substantial portion of these funds were not used to purchase the promised securities, but instead were unlawfully funneled by the Defendants to pay various fees to the promoters and other facilitators of the FLIP transaction.  (Am. Compl. ¶¶ 27, 29.)

{20}   Plaintiffs allege further that they paid Defendants an additional $116,000 pursuant to agreements that purported to provide Plaintiffs with other financial and tax advisory services but that were, in fact, mere continuations of the Defendants' "fraudulent scheme to enrich themselves by hiding the true nature of the FLIP strategy." (Am. Compl. ¶¶ 46H, 51F.)

{21}   Plaintiffs filed tax returns for P IV in October 1999, and again in 2000, that reflected the capital losses purportedly generated by the FLIP transaction.  (Am. Compl. ¶ 50.)

{22}   The Internal Revenue Service (the "IRS"), however, subsequently audited P IV's return and

disallowed the claimed losses.  (Am. Compl. ¶¶ 52-54.)

{23}   In 2003, Plaintiffs settled the IRS audit on terms that required them to retract the claimed losses and pay the government substantial amounts in back taxes and interest charges.  (Am. Compl. ¶ 55.)

{24}   In their original Complaint, Plaintiffs allege claims of civil conspiracy, simple and gross negligence, fraud, constructive fraud, breach of fiduciary duty, negligent misrepresentation, and unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes.

{25}   Plaintiffs original Complaint seeks:  (a) recovery of the interest charges and related professional fees that Plaintiffs allege they were forced to pay to resolve the IRS audit; (b) recovery of the $1.8 million in expenses, transaction fees, and advisory fees allegedly lost as a result of the FLIP transaction; (c) treble and/or punitive damages; and (d) recovery of attorneys fees.

{26}   The Amended Complaint seeks the same relief, but it adds the two additional claims for relief that are the subject of the Motion.

## II.

## CONCLUSIONS OF LAW

### A.

### STANDARD ON MOTION TO AMEND

{27}   Rule 15(a) of the North Carolina Rules of Civil Procedure provides that a party may amend his pleading once as a matter of course "at any time before a responsive pleading is served."  N.C.G.S. § 1A-1, Rule 15(a) (2006).[1]   Otherwise, "a party may amend his pleading only by leave of court," and "leave shall be freely given when justice so requires."  *Id.*

{28}   Generally, a trial court should grant a party leave to amend a pleading absent a showing of material prejudice.  *Mauney v. Morris*, 316 N.C. 67, 72, 340 S.E.2d 397, 400 (1986); *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 31, 598 S.E.2d 570, 590 (2004).  Reasons warranting a denial of leave to amend include: (a) undue delay; (b) bad faith; (c) undue prejudice; (d) futility of the amendment; and (e) repeated failures to cure defects by previous amendment.  *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d 632, 634 (1985).

{29}   In this case, the Defendants assert that the Plaintiffs' attempt to assert a state RICO claim under Chapter 75 of the North Carolina General Statutes would be futile under the facts as alleged in the proposed Amended Complaint.  For the reasons set forth below, the Court agrees and, therefore, **DENIES** that portion of the Plaintiffs' proposed amendment.

### B.

## THE NORTH CAROLINA RICO ACT

{30} The North Carolina RICO Act (the "Act") states that no person shall:

(1) Engage in a pattern of racketeering activity or, through a pattern of racketeering activities or through proceeds derived therefrom, acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money; or
(2) Conduct or participate in, directly or indirectly, any enterprise through a pattern of racketeering activity whether indirectly, or employed by or associated with such enterprise; or
(3) Conspire with another or attempt to violate any of the provisions of subdivision (1) or (2) of this subsection.

N.C.G.S. § 75D-4(a) (2006).

{31} "Racketeering activity" is defined as a violation of one of a host of specified state and federal statutes, regardless of a person's criminal intent. N.C.G.S. § 75D-3(b)-(c) (2006).

{32} The Act provides forfeiture remedies that may only be exercised by the Attorney General. N.C.G.S. § 75D-5 (2006). The Act also provides a private right of action, and recovery of treble damages and reasonable attorneys fees, to "[a]ny innocent person who is injured or damaged in his business or property by reason of any violation of G.S. 75D-4 involving a pattern of racketeering activity." N.C.G.S. § 75D-8(c) (2006).

{33} The Act, however, provides a more limiting definition of what constitutes a "pattern of racketeering activity" for purposes of a private action. More specifically, a plaintiff must allege that "at least one act of racketeering activity is an act of racketeering activity other than (i) an act indictable under 18 U.S.C. § 1341 or U.S.C. § 1343 [prohibiting wire and mail fraud], **or** (ii) an act which is an offense involving fraud in the sale of securities." N.C.G.S. § 75D-8(c) (2006) (emphasis added).

### C.

### ANALYSIS

{34} The Plaintiffs assert that their Amended Complaint satisfies the pleading requirements of the Act because they have alleged a number of racketeering acts that are violations of state law not enumerated in N.C.G.S. § 75D-8(c) (2006), including allegations that the Defendants: (a) obtained funds and signatures from the Plaintiffs through false pretenses, in violation of N.C.G.S. §§ 14-100, 101; (b) engaged in fraudulent and deceptive advertising with respect to the FLIP transaction, in violation of N.C.G.S. § 14-117; (c) embezzled funds from the Plaintiffs, in violation of N.C.G.S. § 14-90, and (d) engaged in a criminal conspiracy, in violation of N.C.G.S. § 14-2.4.[2] (Am. Compl. ¶ 124.)

{35} Defendants insist, however, that the gravamen of the Plaintiffs' allegations, and all of the

Defendants' alleged misconduct, revolves around the peddling of a tax shelter strategy that required Plaintiffs to make wire transfers and other payments for the purchase of certain securities and payment of related investment advisory fees. According to the Defendants, all of the Plaintiffs' allegations, whether contained in the Complaint or the Amended Complaint, constitute mail fraud, wire fraud, or acts which are offenses involving securities fraud, and thus do not state a proper claim for relief under the Act. I agree.

{36}   My research has not identified any case interpreting the breadth of the North Carolina RICO Act on similar facts, and the parties have not cited any such case in their briefs. Accordingly, the issue before me appears to be one of first impression.

{37}   In support of their position, Defendants rely heavily on federal cases interpreting the federal RICO statute, 18 U.S.C. §§ 1961-68. As Plaintiffs correctly note, however, the language of the federal statute is not analogous to the Act.[3] Accordingly, in the absence of any binding precedent interpreting the Act, the Court will apply the following well-established rules of statutory construction.

{38}   First, the primary rule of statutory construction is to effectuate the intent of the legislature. *State v. Roache*, 358 N.C. 243, 273, 595 S.E.2d 381, 402 (2004). Second, a statute that is clear and unambiguous must be construed using its plain meaning. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Where a statute is ambiguous, however, "judicial construction must be used to ascertain the legislative will." *Id.* at 209, 388 S.E.2d at 136-37. The legislative will or intent "must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied." *Milk Commission v. Nat'l Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967).

{39}   Applying these rules to the Act, I find first that the legislature has expressed clearly its intent under this statute to "provide compensation to private persons injured by organized unlawful activity." N.C.G.S. § 75D-2(b) (2006). The legislature, however, also chose to limit the remedy of a private action by making it unavailable in cases where all of the alleged acts of racketeering activity are also: (a) indictable as wire or mail fraud (regardless of the scope or purpose of the unlawful activity); **or** (b) acts that are offenses involving fraud in the sale of securities, that is, acts or offenses that have as their genesis an overarching purpose to commit securities fraud. N.C.G.S. § 75D-8(c) (2006).

{40}   As a result, and assuming *arguendo* that none of the state and federal offenses that the Plaintiffs allege as predicate acts of racketeering activity amount to mail or wire fraud, the Amended Complaint nevertheless alleges plainly that all of the predicate acts were part of a common and fraudulent scheme to induce Plaintiffs into investing in the FLIP transaction. The FLIP transaction, in turn, consisted of the

purchase and sale of securities. (Am. Compl. ¶¶ 36-38.)

{41}     Put another way, Plaintiffs' Amended Complaint alleges a criminal conspiracy on the part of the Defendants to (a) solicit Plaintiffs to invest in the FLIP transaction via fraudulent and deceptive advertising; (b) obtain the Plaintiffs' money by utilizing the false pretenses of the sham FLIP transaction; (c) obtain one or more of the Plaintiffs' signatures for the wiring of funds and completion of the FLIP transaction; (d) embezzle the Plaintiffs' money by utilizing the same sham FLIP transaction; (e) hide the proceeds of the ill-gotten gains obtained through the FLIP transaction; and (f) avoid discovery of the FLIP transaction by government officials.

{42}     Applying the plain language of the Act, I find that these alleged offenses describe misconduct that is coincident with the FLIP transaction. Thus, all of the alleged offenses are predicate acts involving fraud in the sale of the securities and, as such, implicate the bar set out in N.C.G.S. § 75D-8(c) (2006). *Cf. Jacoboni v. KPMG, LLP*, 314 F. Supp. 2d 1172, 1179-80 (M.D. Fla. 2004) (arriving at a similar result with respect to the securities exception found in the federal RICO statute). Accordingly, because the Amended Complaint fails, as a matter of law, to allege a proper claim under the Act, the Court will **DENY** this portion of the amendment as futile.

## CONCLUSION

{43}     For the reasons set forth above, the Court will **DENY** the Plaintiffs' Motion to Amend and Supplement Complaint to assert an Eleventh Claim for Relief alleging violations of the North Carolina RICO Act. The Court **GRANTS** the Motion in all other respects and directs Plaintiffs to serve their amended pleading within fifteen (15) days of the entry of this Order.

This the 15th day of November, 2006.

---

[1] Defendants Spitz and Wachovia have served responsive pleadings, and so Plaintiffs would be required to seek leave to amend as to them. The remaining Defendants have not served responsive pleadings, and so it would appear that Plaintiffs could amend their Complaint as to them as a matter of right. Nevertheless, as the Plaintiffs have sought leave to amend as to all Defendants, and the Court would inevitably be required to address the legal sufficiency of the amended pleading via a Rule 12 motion, I conclude that this issue is ripe for disposition.

[2] At oral argument, Plaintiffs asserted that their Amended Complaint also alleged violations by the Defendants of various federal statutes, including: (a) 26 U.S.C. §§ 7201, 7206 (which are sections of the Internal Revenue Code dealing with tax evasion and the making of false statements or commission of fraud in connection with a return); (b) 18 U.S.C. §§ 1956(a)(1)-(2) (relating to the Defendants' allegedly unlawful overseas transfer of funds obtained through the FLIP transaction); and (c) 18 U.S.C. §§ 1503(a), 1512(c)(1)-(2) (relating to the Defendants' alleged attempt to destroy documents related to the FLIP transaction or to otherwise obstruct and impede the due administration of justice). Plaintiffs did not specifically plead these allegations as predicate RICO acts in paragraph 124 of the Amended Complaint. In any event, my analysis regarding the merits of the Motion is not affected by these additional allegations.

[3] The Federal RICO Act, 18 U.S.C. §§ 1961-68, provides civil and criminal liability for individuals engaged in "a pattern of racketeering activity." 18 U.S.C.S. § 1962 (2006). A civil RICO claimant may not, however, "rely upon any conduct that would

have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962" unless the person who committed said fraudulent conduct has been criminally convicted. 18 U.S.C.S. § 1964(c) (2006).