IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-64

No. 214A21

Filed 17 June 2022

BELMONT ASSOCIATION, INC.

v.

THOMAS FARWIG and wife, RANA FARWIG and NANCY MAINARD

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 277 N.C. App. 387 (2021), affirming an order entered on 3 January 2020 by Judge Graham Shirley in Superior Court, Wake County. Heard in the Supreme Court on 23 March 2022.

*Jordan Price Wall Gray Jones & Carlton, PLLC, by Brian S. Edlin, Hope Derby Carmichael, and Mollie L. Cozart, for plaintiff-appellee.*

*Thurman, Wilson, Boutwell & Galvin, P.A., by James P. Galvin, for defendant-appellants.*

*Joshua H. Stein, Attorney General, by Ryan Y. Park, Solicitor General, and Nicholas S. Brod, Assistant Solicitor General, for the State of North Carolina, amicus curiae.*

*Southern Environmental Law Center, by Nicholas Jimenez and Lauren J. Bowen, for North Carolina Sustainable Energy Association, amicus curiae.*

*J. Ronald Jones Jr. and Bettie Kelley Sousa for Solar Industry Businesses, amicus curiae.*

*Law Firm Carolinas, by Harmony W. Taylor, for Community Associations Institute – North Carolina Chapter, Inc., amicus curiae.*

HUDSON, Justice.

¶ 1 Thomas and Rana Farwig and Nancy Mainard (together, the Farwigs or defendants) appeal as of right based upon a dissent from a decision of the Court of Appeals, in which the majority affirmed the trial court's grant of summary judgment to plaintiff Belmont Association, Inc. (Belmont). The Court of Appeals below affirmed the grant of summary judgment to Belmont. On appeal, defendants argue the Court of Appeals erred in its interpretation of N.C.G.S. § 22B-20. We agree, reverse the decision of the Court of Appeals, and remand for further remand to the trial court for entry of summary judgment for defendants on the declaratory judgment claim and for further proceedings not inconsistent with this opinion.

## I. Factual and Procedural Background

¶ 2 On 9 December 2011, developers recorded the Declaration of Protective Covenants for Belmont at Deed Book 14571, page 2528 in the Wake County Public Registry. Belmont Association was organized to administer and enforce the covenants and restrictions under the Declaration, and all covenants and restrictions contained in the Declaration run with the land of all residential units in the Belmont subdivision.

¶ 3 The Declaration, among other things, contained various restrictions on the use of property within Belmont. Although many specific uses of property were restricted by Article IX of the Declaration, including "animals," "home businesses," restrictions

on "leases," "temporary structures," and "wetlands, conservation areas, and buffers," the use of residential solar panels was not specifically mentioned anywhere in the Declaration.

¶ 4        Nevertheless, Article XI of the Declaration establishes an "Architectural Review Committee" (ARC) and describes its functions. Section 3(a) of Article XI provides:

> The [ARC] shall have the right to refuse to approve any Plans for improvements which are not, in its sole discretion, suitable or desirable for the Properties, including for any of the following: (i) lack of harmony of external design with surrounding structures and environment; and (ii) aesthetic reasons. Each Owner acknowledges that determinations as to such matters may be subjective and opinions may vary as to the desirability and/or attractiveness of particular improvements.

¶ 5        On or about 17 December 2012, defendants purchased Lot 42, located at 4123 Davis Meadow Street, Raleigh, North Carolina, in the Belmont subdivision. Lot 42 is one of the properties subject to the Declaration.

¶ 6        On or about 5 February 2018, defendants installed solar panels on the roof of their house on Lot 42 at a cost of over $32,000. Five months later, the ARC sent defendants a notice of architectural violation and asked defendants to submit an architectural request form to the ARC. Defendants submitted the architectural request form on 20 July 2018 seeking approval of the solar panels along with a petition to allow solar panels on the front portion of the roof of homes in Belmont that

was signed by twenty-two residents. The documentation noted that solar panels must face southward to be effective.

¶ 7        On 5 September 2018, Belmont denied defendants' application. While acknowledging the Declaration did not specifically address solar panels, Belmont cited "aesthetic" problems as the reason for its denial. It further stated that "the proposed location of the panels were not consistent with the plan and scheme of development in Belmont." Belmont suggested defendants could move the solar panels to a part of the house not visible from the road, but defendants responded that moving the solar panels would significantly reduce the energy generated by the panels and a shade report showed the location of the panels received the most light.

¶ 8        On 4 October 2018, defendants appealed the ARC's denial of their architectural request form. On 2 November 2018, Belmont denied defendants' appeal. Belmont demanded defendants remove the solar panels by 7 December 2018. The solar panels were not removed by that date and Belmont subsequently sent a notice of hearing. Following a 30 January 2019 hearing, at which Thomas Farwig presented a defense of defendants' actions, Belmont voted to impose a fine of $50 per day after 1 March 2019 if the solar panels were not removed. Belmont began imposing fines on defendants on or about 8 March 2019, and defendants began paying the fines to avoid foreclosure.

¶ 9        On 1 April 2019, Belmont filed a Claim of Lien on Lot 42, alleging a debt of

$50.00. The next day, Belmont filed its complaint seeking injunctive relief and the collection of fines imposed. On 7 June 2019, defendants filed an answer, motion to dismiss, and counterclaims against Belmont for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, slander of title, and violation of N.C.G.S. § 75-1.1 *et seq*. Belmont filed a motion to dismiss, motion for judgment on the pleadings, and reply to defendants' counterclaims. Belmont filed a motion for summary judgment on 5 November 2019 following discovery.

¶ 10      After a hearing on 11 December 2019, the Superior Court, Wake County, Judge Graham Shirley presiding, granted in part Belmont's motion for summary judgment as to Belmont's first claim for injunctive relief and defendants' first counterclaim for declaratory judgment. The trial court issued its order on 3 January 2020, in which it ruled that N.C.G.S. § 22B-20(d) applied to the action; that "this action involves a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors as described in N.C.G.S. § 22B-20(b) that are visible by a person on the ground on a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces"; and that N.C.G.S. § 22B-20(c) is not applicable "because subsection (d) is applicable." Defendants appealed the trial court's order granting Belmont's motion for summary judgment to the Court of Appeals.

¶ 11      On appeal to the Court of Appeals, defendants argued the trial court erred in

concluding that N.C.G.S. § 22B-20(d) applied because the Declaration did not expressly cover solar panels and, furthermore, that it erred in concluding the Declaration as applied was not void under N.C.G.S. § 22B-20(b).

In a divided opinion authored by Judge Gore, the Court of Appeals affirmed the trial court's order granting in part summary judgment to Belmont. The majority held that "[s]ubsection (d) of N.C.[G.S.] § 22B-20 is applicable in this action because the Declaration has the effect of prohibiting the installation of solar panels '[o]n a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces.' " *Belmont Ass'n v. Farwig*, 277 N.C. App. 387, 2021-NCCOA-207, ¶ 21 (third alteration in original). Judge Jackson dissented from the majority opinion, arguing that the majority's holding "ignores precisely what the statutory ban forbids" by misconstruing a restriction that effectively prohibits the installation of solar panels even if it does not do so expressly. *Id.* ¶ 22 (Jackson, J., dissenting).

Defendants timely appealed to this Court under N.C.G.S. § 7A-30 on the basis of the dissenting opinion.

## II.   Analysis

On appeal, defendants argue the Court of Appeals erred in its interpretation of N.C.G.S. § 22B-20 in two ways. First, they argue the Court of Appeals erred in its application of N.C.G.S. § 22B-20(b) by failing to invalidate restrictions that effectively

prohibit the installation of solar panels. Second, they argue the Court of Appeals erred in its application of N.C.G.S. § 22B-20(d) by failing to require an existing "deed restriction, covenant, or similar binding agreement" that affirmatively seeks to regulate solar panels in order for plaintiff to avail itself of the exception therein. We agree and reverse the decision of the Court of Appeals affirming the trial court's order granting summary judgment to Belmont.

¶ 15        "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573 (2008) (cleaned up); *see* N.C.G.S. § 1A-1, Rule 56(c) (2021). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651 (2001). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337 (2009) (cleaned up).

¶ 16        This case presents a question of statutory interpretation of first impression. "Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144 (1992). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor

of giving the words their plain and definite meaning." *State v. Beck*, 359 N.C. 611, 614 (2005). "However, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. Canons of statutory interpretation are only employed if the language of the statute is ambiguous or lacks precision, or is fairly susceptible of two or more meanings." *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 2021-NCSC-14, ¶ 10 (cleaned up).

Section 22B-20 provides as follows:

> (b)     Except as provided in subsection (d) of this section, any deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit, or have the effect of prohibiting, the installation of a solar collector that gathers solar radiation as a substitute for traditional energy for water heating, active space heating and cooling, passive heating, or generating electricity for a residential property on land subject to the deed restriction, covenant, or agreement is void and unenforceable. As used in this section, the term "residential property" means property where the predominant use is for residential purposes. The term "residential property" does not include any condominium created under Chapter 47A or 47C of the General Statutes located in a multi-story building containing units having horizontal boundaries described in the declaration. As used in this section, the term "declaration" has the same meaning as in G.S. 47A-3 or G.S. 47-1-103, depending on the chapter of the General Statutes under which the condominium was created.

> (c)     This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would regulate the location or screening of solar collectors as described in subsection (b) of this section, provided the deed restriction, covenant, or similar binding agreement does not have the effect of

preventing the reasonable use of a solar collector for a
residential property. . . .

(d)     This section does not prohibit a deed
restriction, covenant, or similar binding agreement that
runs with the land that would prohibit the location of solar
collectors as described in subsection (b) of this section that
are visible by a person on the ground:

(1)  On the façade of a structure that faces areas open
to common or public access;

(2)  On a roof surface that slopes downward toward the
same areas open to common or public access that
the façade of the structure faces; or

(3)  Within the area set off by a line running across the
façade of the structure extending to the property
boundaries on either side of the façade, and those
areas of common or public access faced by the
structure.

N.C.G.S. § 22B-20 (2021).

First, defendants argue the Court of Appeals erred in its interpretation of
N.C.G.S. § 22B-20(b). By its plain terms, N.C.G.S. § 22B-20(b) applies not just to "any
deed restriction, covenant, or similar binding agreement that runs with the land that
would prohibit . . . the installation of a solar collector" but also to "any deed
restriction, covenant, or similar binding agreement that runs with the land that
would . . . *have the effect of prohibiting*[ ] the installation of a solar collector." N.C.G.S.
§ 22B-20(b) (emphasis added). Based on the plain and unambiguous meaning of
subsection (b), the ARC's restriction of the use of solar panels under provisions of

Article XI of the Declaration is void unless there is some exception, because even though the Declaration does not *expressly* prohibit the installation solar panels, the provisions of Article XI of the Declaration which treat the installation of solar panels as an "improvement" subject to aesthetic regulation by the ARC *effectively* prohibit their installation. Accordingly, under N.C.G.S. § 22B-20(b), the restriction is prohibited unless there is some exception.

¶ 19     Subsection (c) provides one exception for a "deed restriction, covenant, or similar binding agreement [that] does not have the effect of preventing the reasonable use of a solar collector for a residential property." N.C.G.S. § 22B-20(c). Subsection (d) provides another exception, which permits a "deed restriction, covenant, or similar binding agreement that runs with the land that *would prohibit* the location of solar collectors as described in subsection (b) of this section that are visible by a person on the ground" subject to certain restrictions. N.C.G.S. § 22B-20(d) (emphasis added). By its plain terms, subsection (d) applies only to such restrictions "that *would prohibit*" solar panels as described in subsection (b).

¶ 20     Here, the restriction at issue prevents the reasonable use of solar panels, and accordingly, the exception contained in subsection (c) would not apply. Subsection (d) also does not apply here because while it provides an exception to subsection (b) allowing restrictions to prevent the installation of solar panels in certain locations, that subsection applies only to restrictions "that would prohibit" the installation of

solar panels. The language describing restrictions that "have the effect" of prohibiting such installation in subsections (b) and (c) is not contained in subsection (d). Nevertheless, the Court of Appeals treats this plain language as ambiguous and proceeds to read subsection (d) to apply also to restrictions that have such an effect even though this language is not contained therein. *Belmont Ass'n*, ¶¶ 15–20. The Court of Appeals reaches this conclusion by looking not only to the text of the statute but also to the title of the legislation and the legislative history. *Id.* ¶¶ 16–17. In so doing, the Court of Appeals contravenes our rules of statutory interpretation by applying canons of construction where the plain meaning of the statute is clear. It is a bedrock rule of statutory interpretation that "[i]f the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *Beck*, 359 N.C. at 614. Accordingly, the Court of Appeals erred in declining to give the words of subsection (d) their plain and definite meaning and by reading the subsection to apply also to restrictions that "have the effect" of prohibiting the installation of solar panels based on sources outside the text. The Court of Appeals necessarily also erred in concluding that the restriction at issue here satisfies subsection (d), because as previously noted, the Declaration does not expressly prohibit the installation of solar panels in any manner.

### III.    Conclusion

We conclude the Court of Appeals erred in affirming the order granting

summary judgment in part to Belmont on the basis that the restrictions at issue, which do not expressly prohibit the installation of solar panels but only have the effect of doing so as applied by the ARC, fall under the safe harbor exception contained in N.C.G.S. § 22B-20(d). We hold that the restriction at issue here does have the effect of prohibiting the installation of solar panels and the reasonable use of solar panels and, accordingly, the exception contained in subsection (c) of the statute does not apply. Since neither statutory exception applies, we hold the restriction violates N.C.G.S. § 22B-(20)(b). Accordingly, defendants are entitled to summary judgment on the declaratory judgment claim. We reverse the decision of the Court of Appeals with instructions to remand to the trial court for further proceedings not inconsistent with this decision.

REVERSED AND REMANDED.

Justice MORGAN dissenting.

While I agree with the recognition and recitation by my learned colleagues in the majority of the pertinent provisions that govern the principles of statutory construction which are germane to this case, I disagree with the majority's application of these established guidelines of interpretation to the facts and circumstances existent here. The manner in which these interpretative directives were employed in the present case has led, in my view, to an erroneous outcome. I would affirm the decision of the Court of Appeals majority that the trial court properly granted summary judgment in favor of plaintiff Belmont Association, Inc.

As cited by the Court's majority, the salient clause of the Belmont residential subdivision's Declaration of Protective Covenants is the authorization for the subdivision's Architectural Review Committee to

> have the right to refuse to approve any Plans for improvements which are not, in its sole discretion, suitable or desirable for the Properties, including for any of the following: (i) lack of harmony of external design with surrounding structures and environment; and (ii) aesthetic reasons. Each Owner acknowledges that determinations as to such matters may be subjective and opinions may vary as to the desirability and/or attractiveness of particular improvements.

This Court has been beckoned to consider the Committee's authorization in light of N.C.G.S. § 22B-20 and its governance of protective covenants as they purport to regulate the installation of solar panels.

In interpreting a statute, the Court must first ascertain the legislative intent

in enacting the legislation. The first consideration in determining legislative intent is the words chosen by the Legislature. When the words are clear and unambiguous, they are to be given their plain and ordinary meanings. *O & M Indus. v. Smith Eng'g Co.*, 360 N.C. 263, 267–68 (2006). "The goal of statutory interpretation is to determine the meaning that the [L]egislature intended upon the statute's enactment." *State v. Rankin*, 371 N.C. 885, 889 (2018).

¶ 25        The intent of the legislative body which enacted N.C.G.S. § 22B-20 is expressly stated in the first passage of the statute, and is contained in the law's subsection (a):

> The intent of the General Assembly is to protect the public health, safety, and welfare by encouraging the development and use of solar resources and by prohibiting deed restrictions, covenants, and other similar agreements that could have the ultimate effect of driving the costs of owning and maintaining a residence beyond the financial means of most owners.

N.C.G.S. § 22B-20(a) (2021).

¶ 26        In determining legislative intent, the words and phrases of a statute must be interpreted contextually, in a manner which harmonizes with the other provisions of the statute and which gives effect to the reason and purpose of the statute. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 215 (1990). "All parts of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable interpretation." *State v. Tew*, 326 N.C. 732, 739 (1990).

¶ 27 Guided by these admonitions of proper statutory construction regarding the requirement that all of the provisions of N.C.G.S. § 22B-20 are to be reconciled with one another in order to maintain the sanctity of the statute while guided by the Legislature's clear intent embodied in the law's subsection (a), the next subsection of the statute—N.C.G.S. § 22B-20(b)—*immediately* begins with a deferential reference to N.C.G.S. § 22B-20(d). Subsection 22B-20(b) states the following, in pertinent part:

> *Except as provided in subsection (d) of this section*, any deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit, or have the effect of prohibiting, the installation of a solar collector that gathers solar radiation as a substitute for traditional energy for water heating, active space heating and cooling, passive heating, or generating electricity for a residential property on land subject to the deed restriction, covenant, or agreement is void and unenforceable.

N.C.G.S. § 22B-20(b) (emphasis added).

¶ 28 In ascribing the plain and ordinary meaning to the phrase "[e]xcept as provided in subsection (d) of this section," as these words are individually selected and collectively joined by the General Assembly in this introductory passage of N.C.G.S. § 22B-20(b), this prelude to the substance of subsection (b) explicitly notes that the content of N.C.G.S. § 22B-20(b) yields to the operation of N.C.G.S. § 22B-20(d) to the extent that N.C.G.S. § 22B-20(b) contains conflicting or differing content in an area also addressed by N.C.G.S. § 22B-20(d). Such conflict and difference would then be resolved by the subservience of subsection (b) to subsection (d) in the given area, and

subsection (d) would control. Otherwise, if there is no subject area of conflict or difference between N.C.G.S. § 22B-20(b) and N.C.G.S. § 22B-20(d), then the provisions of N.C.G.S. § 22B-20(b) stand alone and are operative.

¶ 29        Before determining if, and to what extent, there is any incompatibility between N.C.G.S. § 22B-20(b) and N.C.G.S. § 22B-20(d), the intervening subsection of (c) must be consulted after subsection (b) and before subsection (d), since the Legislature has constructed the statutory enactment in the manner that the Legislature deemed appropriate. Reading the five subsections of N.C.G.S. § 22B-20[1] in sequential order comports with the aforementioned dictate of *Burgess*, that the words and phrases of a statute must be interpreted contextually. In pertinent part, N.C.G.S. § 22B-20(c) reads:

> This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would regulate the location or screening of solar collections as described in subsection (b) of this section, provided the deed restriction, covenant, or similar binding agreement does not have the effect of preventing the reasonable use of a solar collector for a residential property. If an owners' association is responsible for exterior maintenance of a structure containing individual residences, a deed restriction, covenant, or similar binding agreement that runs with the land may provide that (i) the title owner of the residence shall be responsible for all damages caused by the installation, existence, or removal of solar collectors; (ii) the title owner of the residence shall hold harmless and indemnify the owners' association for any damages caused

---

[1] Subsection 22B-20(e) addresses the "award [of] costs and reasonable attorneys' fees to the prevailing party" and is irrelevant to the dissent's analysis.

> by the installation, existence, or removal of solar collectors; and (iii) the owners' association shall not be responsible for maintenance, repair, replacement, or removal of solar collectors unless expressly agreed in a written agreement that is recorded in the office of the register of deeds in the county or counties in which the property is situated.

N.C.G.S. § 22B-20(c). Subsection 22B-20(c), while expressly stating that it does not prohibit covenants such as those mentioned in Belmont's Declaration which plaintiff could choose to apply in order to "regulate the location or screening of solar collectors as described in subsection (b)," nonetheless could ban the operation of the covenant if it would "have the effect of preventing the reasonable use of a solar collector for a residential property." *Id.* On its face, the Declaration's covenant language does not operate to this extent, and the majority recognizes in its written opinion that this exception contained in N.C.G.S. § 22B-20(c) does not apply in the instant case. Hence, N.C.G.S. § 22B-20(c) does not impact this case with respect to defendants' installation of solar panels.

¶ 30        Subsection 22B-20(d), which preempts the operation of N.C.G.S. § 22B-20(b) to the extent that subsection (b) and subsection (d) are incompatible with one another due to conflicting or differing content in light of the plain and ordinary meanings of the introductory words of N.C.G.S. § 22B-20(b), "Except as provided in subsection (d) of this section," which render N.C.G.S. § 22B-20(b) subservient to N.C.G.S. § 22B-20(d) as described, is composed entirely of the following provisions:

> This section does not prohibit a deed restriction, covenant,

or similar binding agreement that runs with the land that would prohibit the location of solar collectors as described in subsection (b) of this section that are visible by a person on the ground:

> (1) On the façade of a structure that faces areas open to common or public access;
>
> (2) On a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces; or
>
> (3) Within the area set off by a line running across the façade of the structure extending to the property boundaries on either side of the façade, and those areas of common or public access faced by the structure.

N.C.G.S. § 22B-20(d). Although under N.C.G.S. § 22B-20(b), a covenant such as the one at issue in the current case which plaintiff could deem to apply to the installation of solar panels in plaintiff's potential interpretation of the Declaration would be "void and unenforceable" because subsection (b) does not allow any such covenant to operate "that would prohibit, or have the effect of prohibiting, the installation of" solar panels as performed by defendants in the present case. Subsection 22B-20(d), however, "does not prohibit" the operation of a covenant "that would prohibit the location of solar collectors *as described in subsection (b) of this section* that are visible by a person on the ground: (1) On the façade of a structure that faces areas open to common or public access; [or] (2) On a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces." N.C.G.S. § 22B-20(d) (emphasis added).

¶ 31          In giving the clear and unambiguous words of N.C.G.S. § 22B-20 their plain and ordinary meanings as this Court has directed in *O & M Industries*, I conclude that the principles of statutory construction support plaintiff's determination to deny defendants' application to install solar panels on their residential home, in plaintiff's words, "because the installation can be seen from the road in front of the home, and is not able to be shielded," with said justification being grounded in two places in N.C.G.S. § 22B-20 where the guidelines governing statutory interpretation are readily exercised: (1) the introductory clause of N.C.G.S. § 22B-20(b)—"Except as provided in subsection (d) of this section"—which establishes in clear and unambiguous words that subsection (b) yields to the operation of N.C.G.S. § 22B-20(d) to the extent that N.C.G.S. § 22B-20(b) contains conflicting or differing content in an area also addressed by N.C.G.S. § 22B-20(d), wherein subsection (d) would then supersede subsection (b) and thus subsection (d) would then control the outcome of the issue; and (2) the sole sentence of N.C.G.S. § 22B-20(d) which begins, "This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors as described in subsection (b) of this section that are visible by a person on the ground," and which establishes in clear and unambiguous words that restrictions on the placement of solar panels which are generally disallowed by subsection (b) are authorized by subsection (d) to be allowed in circumstances where, as in the present case, the

placement of the solar panels causes them to be visible from ground level from the façade of a structure that faces areas open to common or public access, or on a roof surface that slopes downward toward the same areas which are open to common or public access that the façade of the structure faces. Here, plaintiff denied defendants' application for the installation of solar panels because plaintiff determined that "the installation can be seen from the road in front of the home, and is not able to be shielded." There is evidence in the record that defendants placed the solar panels at issue on the front area of their home's roof which sloped southward and was visible from the street in front of the home. As I see it, N.C.G.S. § 22B-20(d), which supersedes N.C.G.S. § 22B-20(b) in this aspect of the statute, therefore lawfully empowered plaintiff to deny defendants' application to install the solar panels.

¶ 32        From my perspective, the application of the well-settled principles of statutory interpretation to N.C.G.S. § 22B-20 readily shows that plaintiff had the authority to deny defendants' application. This implementation of standard statutory construction would not thwart the intent of the General Assembly which undergirds the statute and which was expressed in N.C.G.S. § 22B-20(a), because the interaction between and among the various subsections of the law operates to eradicate any pervasive or arbitrary prohibitions of the development and use of solar resources by limiting the availability of deed restrictions, covenants, and other similar agreements that could have the ultimate effect of driving the costs of owning and maintaining a

residence beyond the financial means of most owners.

¶ 33 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2021). "A ruling on a motion for summary judgment must consider the evidence in the light most favorable to the non-movant, drawing all inferences in the non-movant's favor. The standard of review of an appeal from summary judgment is de novo." *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018) (citation omitted).

¶ 34 While I agree with the majority that summary judgment is the proper disposition of this case, I would render it in favor of plaintiff instead of defendants. Therefore, I would affirm the determination of the Court of Appeals in this case that the trial court correctly granted summary judgment for plaintiff.

Justice BERGER dissenting.

There is a predictable and certain outcome for this case provided the rules of statutory construction, as enunciated by the majority, are followed. Because a decision of the Architectural Review Committee is not a "deed restriction, covenant, or similar binding agreement" under N.C.G.S. § 22B-20, I respectfully dissent.

The facts and law of this case are not complicated. Defendants purchased a lot in a subdivision which was subject to the Declaration of Protective Covenants for Belmont properly recorded with the Wake County Register of Deeds. The Declaration established an Architectural Review Committee (ARC). Pursuant to the Declaration, homeowners were required to request and obtain approval for improvements to their properties from the ARC prior to making any such improvements.

A little over five years after purchasing the property, defendants installed solar panels on the roof of their house without submitting a request to, or obtaining approval from, the ARC. The ARC responded by sending defendants a notice of violation. Ultimately, the ARC rejected defendants' untimely request but gave defendants the option to relocate the solar panels to a part of the house not visible from the road. Defendants refused and this action followed.

Defendants argue plaintiff's denial of their request to install solar panels violated N.C.G.S. § 22B-20, entitled "Deed restrictions and other agreements prohibiting solar collectors." Pursuant to that section,

(b) Except as provided in subsection (d) of this

section, any deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit, or have the effect of prohibiting, the installation of a solar collector that gathers solar radiation as a substitute for traditional energy for water heating, active space heating and cooling, passive heating, or generating electricity for a residential property on land subject to the deed restriction, covenant, or agreement is void and unenforceable. . . .

(c) This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would regulate the location or screening of solar collectors as described in subsection (b) of this section, provided the deed restriction, covenant, or similar binding agreement does not have the effect of preventing the reasonable use of a solar collector for a residential property. . . .

(d) This section does not prohibit a deed restriction, covenant, or similar binding agreement that runs with the land that would prohibit the location of solar collectors as described in subsection (b) of this section that are visible by a person on the ground:

(1)  On the façade of a structure that faces areas open to common or public access;

(2)  On a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces; or

(3)  Within the area set off by a line running across the façade of the structure extending to the property boundaries on either side of the façade, and those areas of common or public access faced by the structure.

N.C.G.S. § 22B-20(b)–(d) (2021).

By its plain language, the statute prohibits "any deed restriction, covenant, or

similar binding agreement that runs with the land that would prohibit, or have the effect of prohibiting, the installation of a solar collector." N.C.G.S. § 22B-20(b). It is uncontested that defendants' lot was subject to the Declaration described above. The Declaration is the only document in the record that would contain any such "deed restriction, covenant, or similar binding agreement." As the majority notes, "the use of residential solar panels was not specifically mentioned anywhere in the Declaration." The majority further acknowledges that "the Declaration does not expressly prohibit the installation of solar panels in any manner." Thus, there is no restriction set forth in the Declaration that prohibits or would have the effect of prohibiting the installation of solar panels that is at play in this scenario. Rather, it was the decision of the ARC that prohibited the installation of the solar panels by defendants.

¶ 40    A deed restriction, or "restrictive covenant," is defined as "[a] private agreement . . . in a deed . . . that restricts the use or occupancy of real property, esp. by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." *Restrictive Covenant, Black's Law Dictionary* (11th ed. 2019). Further, the term "covenant" is "[a] formal agreement or promise . . . in a contract or deed, to do or not do a particular act; a compact or stipulation." *Covenant, Black's Law Dictionary* (11th ed. 2019). And a "covenant running with the land" is "[a] covenant intimately and inherently involved with the land and therefore binding

subsequent owners and successor grantees indefinitely." *Covenant Running with the Land*, *Black's Law Dictionary* (11th ed. 2019).

¶ 41     A decision by the ARC is not a deed restriction, as it is not an agreement found in defendants' deed; is not a covenant, as it is not an agreement or promise found in a contract or deed; and is not an agreement that runs with the land, as it does not bind subsequent owners and successor grantees indefinitely.  Indeed, counsel for defendants conceded at oral argument that a decision by the ARC does not qualify as a deed restriction, covenant, or similar binding agreement.

¶ 42     However, the majority, citing no authority and acknowledging that the language of the statute is "plain and unambiguous," simply concludes that the decision of the ARC "*ha[s] the effect of prohibiting*[ ] the installation of a solar collector."  The majority claims, in spite of counsel's concession, that "the provisions of . . . the Declaration which treat the installation of solar panels as an 'improvement' subject to aesthetic regulation by the ARC *effectively* prohibit their installation."  This approach, however, ignores the fact that the ARC has the "sole discretion" to approve or reject any requested improvement.  Stated another way, the establishment of the ARC does not effectively preclude any improvement, it merely enables a group of individuals to make decisions on "the desirability and/or attractiveness of particular improvements."

¶ 43     The majority looks solely to the effect of the ARC's decision, not the source of

the restriction, and in so doing, ignores the plain language of N.C.G.S. § 22B-20.

¶ 44          However, even assuming the action by the ARC is covered under subsection (b) in that it "ha[s] the effect of" prohibiting the installation of solar collectors, the majority errs in concluding that subsection (d) does not apply. Here the trial court found that the solar collectors on defendants' property "are visible by a person on the ground on a roof surface that slopes downward toward the same areas open to common or public access that the façade of the structure faces." Therefore, as noted by Justice Morgan in his dissenting opinion, subsection (d) applies so long as the relevant deed restriction or covenant "would prohibit the location of solar collectors as described in subsection (b)." N.C.G.S. § 22B-20(d).

¶ 45          According to the majority, the "deed restriction, covenant, or similar binding agreement" in this case is "the ARC's restriction of the use of solar panels under provisions of Article XI of the Declaration." Based upon the majority's own characterization, the ARC's decision certainly "would prohibit the location of solar collectors" within the meaning of subsection (d) since it did in fact prohibit defendants from placing solar panels on the street-facing side of their roof. In other words, if the majority believes that the ARC's *decision* constitutes a "deed restriction, covenant, or similar binding agreement" under subsection (b), then logically it must also conclude that the decision falls under subsection (d)'s exception.

¶ 46          Despite the majority's overbroad reading of subsection (b), it narrowly reads

subsection (d). It appears to limit the application of subsection (d) to situations where a deed restriction, covenant, or similar binding agreement contains express language prohibiting the installation of solar collectors. Such a result clearly is not what the General Assembly intended. It is puzzling why the majority would interpret subsection (b) so broadly but subsection (d) so narrowly. A better reading of the plain language is that a restriction which falls under subsection (b) is not void if it meets one of the criteria enumerated in subsection (d).

¶ 47      Lastly, even if the majority's application of subsections (b) and (d) was correct, the appropriate remedy still would not be to grant summary judgment in defendants' favor. Rather, the case should be remanded to the trial court to determine whether subsection (c) applies. The trial court summarily concluded that "subsection (c) . . . is not applicable because subsection (d) is applicable." Thus, the trial court never found that the ARC's decision prevented "the reasonable use of a solar collector" under subsection (c). N.C.G.S. § 22B-20(c). This factual determination is for the trial court, not an appellate court. Therefore, this case should be remanded to the trial court to make this factual determination.

Chief Justice NEWBY joins in this dissenting opinion.