IN THE SUPREME COURT OF NORTH CAROLINA

No. 29A23

Filed 23 May 2024

IN THE MATTER OF: THE MCCLATCHY COMPANY, LLC, d/b/a The News & Observer; CAROLINA PUBLIC PRESS, INC. d/b/a Carolina Public Press; CAPITOL BROADCASTING COMPANY, INCORPORATED d/b/a WRAL-TV; LEE ENTERPRISES, d/b/a The News & Record; HEARST PROPERTIES, INC. d/b/a WXII; GANNETT CO., INC., d/b/a The Burlington Times News; MACKENZIE WILKES, JOHN NORCROSS, and GRACE TERRY, of the ELON NEWS NETWORK

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 287 N.C. App. 126 (2022), vacating an order entered on 15 June 2021 by Judge Andrew H. Hanford in Superior Court, Alamance County, and remanding the case. Heard in the Supreme Court on 7 November 2023.

*Stevens Martin Vaughn & Tadych, PLLC, by Michael J. Tadych, Karen M. Rabenau, Hugh Stevens, and Elizabeth J. Soja, for petitioner-appellants.*

*Envisage Law, by Anthony J. Biller and Adam P. Banks, for respondent-appellee.*

ALLEN, Justice.

Petitioners obtained a court order granting their petition for copies of law enforcement recordings of a march that took place in Graham, North Carolina. Individuals who wish to receive copies of such law enforcement recordings must follow the procedures set out in N.C.G.S. § 132-1.4A. A divided panel of the Court of Appeals vacated the trial court's order, holding that the trial court had failed to determine petitioners' eligibility to request copies of the recordings under the statute.

-1-

*In re The McClatchy Co.*, 287 N.C. App. 126, 134–36 (2022). The Court of Appeals majority also held that the trial court had not understood that it could place conditions or restrictions on the release of the recordings. *Id.* at 135.

As explained below, anyone may seek copies of law enforcement recordings under the provision in N.C.G.S. § 132-1.4A invoked by petitioners, so the trial court had no reason to question their eligibility to proceed. Moreover, we do not accept the Graham Police Department's argument to this Court that the statute required petitioners to file a civil action instead of a petition.

We agree with the Court of Appeals, however, that the trial court erroneously believed that it could not condition or restrict the release of the recordings. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals and remand this case for further proceedings consistent with this opinion.

## I. Background

On 31 October 2020, approximately 200 people took part in the "I Am Change" march in Graham, North Carolina. According to news reports, clashes occurred between marchers and law enforcement officers as officers attempted to clear a blocked intersection and disperse a crowd gathered at the Alamance County Historical Courthouse. The confrontations resulted in numerous arrests.

On 2 March 2021, petitioners—a group of media organizations and reporters— filed a petition in the Superior Court, Alamance County, seeking the "release of all law enforcement and other recordings leading up to, during[,] and after the 'I am

Change' march . . . from the time the first contact was made with marchers, spectators or media . . . until the last member of law enforcement left the scene." The petition identified the Alamance County Sheriff's Office (ACSO) and the Graham Police Department (GPD) as the law enforcement agencies with custody of the recordings. Petitioners served copies of the petition on the sheriff of Alamance County, the chief of the GPD, and the Alamance County district attorney.

The terms "release" and "disclosure" mean different things in N.C.G.S. § 132-1.4A, the statute that governs access to custodial law enforcement agency recordings (CLEAR). As defined by the statute, CLEAR include any "visual, audio, or visual and audio recording captured by a body-worn camera, a dashboard camera, or any other video or audio recording device operated by or on behalf of a law enforcement agency or law enforcement agency personnel when carrying out law enforcement responsibilities."[1] N.C.G.S. § 132-1.4A(a)(6) (2023). To release CLEAR is to "provide a copy of a recording." N.C.G.S. § 132-1.4A(a)(7). To disclose CLEAR is to "make a recording available for viewing or listening . . . at a time and location chosen by the custodial law enforcement agency." N.C.G.S. § 132-1.4A(a)(4); *see also id.* ("[Disclosure] does not include the release of a recording.").

Under subsection (c) of the CLEAR statute, the only people eligible to request disclosure are individuals whose images or voices are captured in the recordings or

---

[1] The definition of "recording" in the CLEAR statute does not include "any video or audio recordings of interviews regarding agency internal investigations or interviews or interrogations of suspects or witnesses." N.C.G.S. § 132-1.4A(a)(6) (2023).

their personal representatives.[2] N.C.G.S. § 132-1.4A(c). Unless the recording depicts a death or serious bodily injury, no court order is necessary for a law enforcement agency to disclose CLEAR to an eligible person. N.C.G.S. § 132-1.4A(b1)–(b3), (c). On the other hand, with certain exceptions not relevant to this case, the CLEAR statute prohibits the release of CLEAR except pursuant to a court order.[3] Subsection (f) of the statute authorizes individuals who are eligible for disclosure under subsection (c) to "petition the superior court in any county where any portion of the recording was made for an order releasing the recording." N.C.G.S. § 132-1.4A(f). More generally, subsection (g) allows "any person" requesting the release of CLEAR to "file an action in the superior court in any county where any portion of the recording was made for an order releasing the recording." N.C.G.S. § 132-1.4A(g).

In filing their petition for release, petitioners used a form created by the North Carolina Administrative Office of the Courts (AOC), form AOC-CV-270. They checked

---

[2] For purposes of the CLEAR statute, a personal representative is:

> A parent, court-appointed guardian, spouse, or attorney licensed in North Carolina of a person whose image or voice is in the recording. If a person whose image or voice is in the recording is deceased, the term also means the personal representative of the estate of the deceased person; the deceased person's surviving spouse, parent, or adult child; the deceased person's attorney licensed in North Carolina; or the parent or guardian of a surviving minor child of the deceased.

N.C.G.S. § 132-1.4A(a)(5).

[3] Subsection (h) of the CLEAR statute authorizes the release of CLEAR without a court order for designated purposes, such as "[f]or suspect identification or apprehension." N.C.G.S. § 132-1.4A(h)(4).

the box on the form indicating that they sought release under subsection (g) of the CLEAR statute. Petitioners also filed a memorandum of law outlining the legal basis for their petition.

On 15 March 2021, following a preliminary hearing, the trial court issued an order requiring the ACSO and the GPD to submit copies of the requested recordings to the court so that it could review them before the next hearing. The order further directed the head of each law enforcement agency "to give notice of the [p]etition and [the upcoming] hearing to any law enforcement personnel whose image or voice is in the recording." Finally, the order required the ACSO and the GPD to provide the court and petitioners' legal counsel with "a list identifying those portions of the requested recordings to which law enforcement objects to release and all bases for those objections." The ACSO and the GPD complied with the order.

On 10 June 2021, the trial court conducted a hearing on the merits of the petition. Petitioners argued that (1) the media's continued willingness to pursue the recordings testified to their ongoing newsworthiness; (2) the privacy interests at stake were minimal because the interactions between marchers and law enforcement officers took place in public; and (3) widespread media coverage of the march reduced the potential impact of the recordings on ongoing trials or investigations. The ACSO and the GPD urged the court to deny the petition, arguing among other things that (1) no compelling public interest supported the release of the recordings because nearly eight months had passed since the "I Am Change" march, rendering it no

longer newsworthy; (2) other recordings of the march were widely available on social media; (3) petitioners' request was overly broad; (4) release of the recordings could damage the reputations of persons arrested on camera; and (5) release could influence ongoing criminal proceedings against persons arrested at the march.

At the conclusion of the hearing, the trial court ordered the release of all recordings requested by petitioners. The court emphasized that it had reviewed the eight statutory standards that courts must consider when deciding whether to release CLEAR:

> (1)     Release is necessary to advance a compelling public interest.
>
> (2)     The recording contains information that is otherwise confidential or exempt from disclosure or release under State or federal law.
>
> (3)     The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding.
>
> (4)     Release would reveal information regarding a person that is of a highly sensitive personal nature.
>
> (5)     Release may harm the reputation or jeopardize the safety of a person.
>
> (6)     Release would create a serious threat to the fair, impartial, and orderly administration of justice.
>
> (7)     Confidentiality is necessary to protect either an active or inactive internal or criminal investigation or potential internal or criminal investigation.
>
> (8)     There is good cause shown to release all portions of a recording.

N.C.G.S. § 132-1.4A(g).

The trial court assessed the applicability of the eight standards to its decision

in the following terms:

> [No. 1,] That the release of the information is necessary to advance a compelling public interest. The Court finds that there is a compelling public interest in the accountability and transparency of law enforcement officers and that this factor weighs in favor of release.
>
> No. 2, The recording contains information that is otherwise confidential or exempt from disclosure or release under state or federal law. This Court finds this factor is not relevant and does not impact the Court's decision.
>
> No. 3, The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding. The Court finds this factor is not relevant and does not impact this decision.
>
> No. 4, Release would reveal information regarding a person that is of a highly sensitive and personal nature. This Court finds that this factor weighs against release.
>
> No. 5, That release may harm the reputation or jeopardize the safety of a person. This Court finds this factor also to weigh against release.
>
> No. 6, That release would create a serious threat to the fair and orderly administration of justice. This court finds that this factor does weigh in favor of release.
>
> No. 7, Confidentiality is necessary to protect an active internal criminal investigation or potential internal or criminal investigation. This Court finds this factor is not relevant and does not impact the Court's decision.
>
> No. 8, There is good cause shown to release all portions of the recordings.

Despite having found that release of the recordings would reveal highly

sensitive and personal information and could harm a person's reputation or safety, the court concluded that it had no choice but to grant the petition in full.

> This Court finds that the photos and the recordings speak for themselves, and this Court does not have the authority to [c]ensor this information absent a legitimate or compelling state interest [ ] to do so. Most importantly this Court gives great weight to transparency and public accountability with regard to police action and considers a failure to release this information to possibly undermine the public interest and confidence in the administration of justice.

On 15 June 2021, the trial court entered a written order memorializing its decision and the basis for its ruling. The order repeated in even stronger terms the court's belief that it "d[id] not have the authority to censor the photos/recordings absent a compelling governmental interest."

The GPD appealed the trial court's 15 June 2021 order. On 20 December 2022, a divided panel of the Court of Appeals issued an opinion vacating the order and remanding the case. *McClatchy*, 287 N.C. App. at 136. The majority premised its decision on a reading of the CLEAR statute that no party to the litigation had advocated. Essentially, the majority interpreted the CLEAR statute to provide that only persons eligible for disclosure under subsection (c) may request the release of CLEAR. *See id.* at 133 ("[Subsection] 132-1.4A(c) provides the limited categories of persons who are authorized to seek release of the law enforcement recordings and records . . . ."); *see also id.* at 134 ("The release of [CLEAR] under any section [of the CLEAR statute] sequentially requires the petitioning party to show it qualifies and

the trial court to so find the basis of that qualification under [N.C.G.S.] § 132-1.4A(c).”). The majority ordered a remand so that the trial court could make the “statutory findings” necessary to determine whether petitioners were eligible under subsection (c) to request release. *Id.* at 135.

Turning to issues “likely to occur on remand,” the majority further held that the trial court had misapprehended the scope of its authority under the CLEAR statute. *Id.* at 134–35. Specifically, the trial court had erroneously believed that it had no choice but to order the release of complete copies of all recordings sought by petitioners. *Id.* at 135. The majority noted that subsection (g) requires a trial court to “release only those portions of the recording that are relevant to the person’s request” and permits the court to “place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate.” *Id.* (emphasis omitted) (quoting N.C.G.S. § 132-1.4A(g)). The majority explained that on remand “[p]etitioner[s] carr[y] and maintain[ ] the burden of eligibility, specificity, and relevance under the [CLEAR] statute. Respondents have no burden on remand.” *Id.* (citing N.C.G.S. § 132-1.4A(c)).

The dissenting judge disagreed with the majority’s contention that only persons eligible for disclosure under subsection (c) may seek the release of CLEAR:

> Though the [CLEAR] statute is long-winded, it is not complex. The statute plainly distinguishes between those persons who are entitled to disclosure of [CLEAR], and those who are not; a person who is entitled to disclosure under subsection (c) may petition for release under subsection (f); all other persons excluded by subsection (c)

may petition for release under subsection (g).

*Id.* at 144–45 (Arrowood, J., dissenting).

The dissenting judge also highlighted the "dangerous" consequence of the

majority's reasoning:

> [T]he majority's mischaracterization, and subsequent
> misapplication, of the plain language of [N.C.G.S.] § 132-
> 1.4A wholly ignores subsection (g); as a result, the majority
> would have it so that those limited persons entitled to
> disclosure under subsection (c) would also be the only
> persons entitled to release.
>
> . . . .
>
> . . . [S]uch an interpretation of [N.C.G.S.] § 132-1.4A
> would ensure that members of the media would *never* be
> allowed to petition the superior court for release of
> [CLEAR], let alone obtain them via court order.

*Id.* at 146.

Lastly, the dissenting judge argued that the trial court did not abuse its

discretion by granting the petition in full: "The trial court analyzed each statutory

standard with careful consideration and, based on its detailed analysis, concluded

that the only acceptable outcome was to order . . . the release of all of the petitioned

[CLEAR]." *Id.* at 150.

On 23 January 2023, petitioners filed a notice of appeal based on the dissent

in the Court of Appeals. At the time, N.C.G.S. § 7A-30(2) provided a right of appeal

to this Court "from any decision of the Court of Appeals rendered in a case . . . [i]n

which there is a dissent when the Court of Appeals is sitting in a panel of three

judges." N.C.G.S. § 7A-30(2) (2023), *repealed by* An Act to Make Base Budget Appropriations for Current Operations of State Agencies, Departments, and Institutions, S.L. 2023-134, § 16.21.(d)–(e), https://www.ncleg.gov/Sessions/2023/Bills/House/PDF/H259v7.pdf.

## II.    Jurisdiction

In its brief to this Court, the GPD argues for the first time that the trial court lacked subject matter jurisdiction over the petition. Subject matter jurisdiction is a court's legal authority to adjudicate the kind of claim alleged. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010). Parties may raise the issue of subject matter jurisdiction at any point. *State v. Newborn*, 384 N.C. 656, 658 (2023). If the record substantiates the GPD's argument, the entire proceeding is void and we need not reach the issues that divided the Court of Appeals. *See High v. Pearce*, 220 N.C. 266, 271 (1941) ("Where there is no jurisdiction of the subject matter the whole proceeding is void *ab initio* and may be treated as a nullity anywhere, at any time, and for any purpose.").

"Whether or not a trial court possesses subject-matter jurisdiction is a question of law that is reviewed de novo." *Wing v. Goldman Sachs Tr. Co.*, 382 N.C. 288, 297 (2022) (quoting *In re A.L.L.*, 376 N.C. 99, 101 (2020)). "When reviewing a matter *de novo*, this Court 'considers the matter anew and freely substitutes its own judgment' for that of the lower courts." *Town of Midland v. Harrell*, 385 N.C. 365, 370 (2023) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647 (2003)).

According to the GPD, the trial court lacked subject matter jurisdiction over the petition because subsection (g) of the CLEAR statute required petitioners to commence a civil action by filing a complaint, not a petition. The GPD points to textual differences between subsections (f) and (g) of the CLEAR statute as grounds for its position. In particular, the GPD observes that, whereas the word "petition" appears in subsection (f), subsection (g) instructs anyone seeking release under its provisions to do so by "fil[ing] an action." Given that petitioners have proceeded under subsection (g), the GPD argues that their decision to file a petition instead of commencing a civil action deprived the trial court of subject matter jurisdiction over their release request. The GPD directs our attention to decisions from the Court of Appeals that adopt this interpretation of subsection (g). *See, e.g., In re Custodial L. Enf't Agency Recording*, 288 N.C. App. 306, 311 (2023) ("Because Petitioners used an AOC form, and did not file a civil action as provided by subsection (g), the trial court lacked subject matter jurisdiction over this case.").

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664 (2001). "The process of construing a statutory provision must begin with an examination of the relevant statutory language." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547 (2018). "If the statute's plain language is clear and unambiguous, this Court applies the statute as written and does not engage in further statutory construction." *N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, No. 281A22, slip op. at 9 (N.C. Mar. 22, 2024) (citing *N.C.*

*Farm Bureau Mut. Ins. Co. v. Lunsford*, 378 N.C. 181, 188 (2021)). "[H]owever, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent." *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45 (1999) (citing *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205 (1990)).

The plain language rule does not apply to the General Assembly's use of "action" in subsection (g) because the term is not clear and unambiguous. "All remedies in the courts of this State divide into (1) actions or (2) special proceedings." *In re Clark*, 303 N.C. 592, 598 n.3 (1981) (citing N.C.G.S. § 1-1). "An action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." N.C.G.S. § 1-2 (2023). "Every other remedy is a special proceeding." N.C.G.S. § 1-3 (2023). Ordinarily, in the civil context, the term "action" is synonymous with "civil action" and "is commenced by filing a complaint with the court." N.C.G.S. § 1A-1, Rule 3(a) (2023). Nonetheless, the word "action" in subsection (g) is ambiguous for at least two reasons.

First, it is not evident that an "action" under subsection (g) fits the definition of "action" in N.C.G.S. § 1-2. As discussed in subsection III.B of this opinion, subsection (g) of the CLEAR statute does not create a right to the release of CLEAR; consequently, it is not a mechanism for the enforcement or protection of a right or the redress or prevention of a wrong.

Second, the General Assembly has applied the term "action" to proceedings initiated by the filing of petitions. The CLEAR statute itself offers an example. Subsections (b1) through (b3) establish a special process for the disclosure of CLEAR in cases where a recording depicts a death or serious bodily injury.[4] Within three business days of receiving a disclosure request that satisfies the notarization requirements in subsection (b2), the custodial law enforcement agency "shall file a petition in superior court" for "issuance of a court order regarding disclosure." N.C.G.S. § 132-1.4A(b3). Subsection (b3) prescribes the procedure that the court must follow and the factors it must consider in ruling on the petition. *Id.* Although such proceedings begin with the filing of petitions, subsection (b3) refers to them as "actions." *Id.* ("Any subsequent proceedings in such actions shall be accorded priority by the trial and appellate courts.").

Another example of a petition-initiated action appears elsewhere in Chapter 132, the state's public records law. Section 132-5.1 addresses the recovery of public records unlawfully held by persons or agencies. Specifically, it authorizes the custodian of the records to file a petition in superior court for their return. N.C.G.S. § 132-5.1(a) (2023). The statute labels this petition-initiated proceeding an "action." N.C.G.S. § 132-5.1(b).

---

[4] To be eligible for disclosure in such a proceeding, the requester must be "a personal representative of the deceased, the injured individual, or a personal representative on behalf of the injured individual." N.C.G.S. § 132-1.4A(b1).

The Juvenile Code in Chapter 7B of the General Statutes supplies more examples of the General Assembly's sometimes generic use of the term "action." Abuse, neglect, and dependency proceedings start with the filing of petitions, but the Code refers to them as actions: "The pleading in an abuse, neglect, or dependency *action* is the *petition*." N.C.G.S. § 7B-401(a) (2023) (emphases added); *see also* N.C.G.S. § 7B-405 (2023) ("An *action* is commenced by the filing of a *petition* in the clerk's office when that office is open . . . ." (emphases added)). Similarly, the Code characterizes a proceeding to terminate parental rights as an "action," even though it begins with the filing of a petition or motion. N.C.G.S. § 7B-1104 (2023).

Like the General Assembly, this Court has employed "action" in reference to proceedings commenced by the filing of petitions. Indeed, we have gone so far as to classify at least one type of petition-initiated proceeding as a civil action. In *Winkler v. North Carolina State Board of Plumbing*, 374 N.C. 726 (2020), this Court said that a disciplinary proceeding before an administrative agency becomes a "civil action" when "either party petitions for judicial review of the decision of the board or commission, and the matter becomes a contested case before a judge." *Id.* at 733; *see also Batson v. Coastal Res. Comm'n*, 282 N.C. App. 1, 5 (2022) ("But it is now well-settled [after *Winkler*] that a petition for judicial review is a civil action." (citation omitted)).

The mere presence of "action" in subsection (g) does not prove that the General Assembly had in mind traditional civil actions commenced by filing complaints. We

must therefore "interpret the statute to give effect to the legislative intent." *Frye Reg'l Med. Ctr.,* 350 N.C. at 45 (citing *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205 (1990)).

The GPD insists that other textual differences between subsection (f) and subsection (g) weigh in favor of construing subsection (g) to require the filing of a complaint. The thrust of the GPD's argument seems to be that these differences spring from a legislative desire to make it easier and quicker to obtain release under subsection (f) than under subsection (g). The CLEAR statute refers to subsection (f) but not to subsection (g) as an "Expedited Process." N.C.G.S. § 132-1.4A(f)–(g). The statute exempts persons who file petitions under subsection (f) but not under subsection (g) from paying filing fees. *Id.* The notice requirements in subsection (f) are less onerous than those in subsection (g). *See id.* In a proceeding under subsection (f), the head of the custodial law enforcement agency must receive notice and an opportunity to be heard. N.C.G.S. § 132-1.4A(f). In an action commenced pursuant to subsection (g), notice and an opportunity to be heard must be afforded to the head of the custodial law enforcement agency, any law enforcement personnel whose images or voices are in the recording, and the district attorney. N.C.G.S. § 132-1.4A(g). Finally, unlike subsection (g), subsection (f) expressly mandates that any petition filed thereunder "be filed on a form approved by [AOC]." N.C.G.S. § 132-1.4A(f).

No doubt the General Assembly intended subsection (f) to provide a streamlined process for the adjudication of requests to release CLEAR. After all, the

only people eligible for release pursuant to subsection (f) are persons—or the personal representatives of persons—eligible for disclosure under subsection (c), that is, individuals whose images or voices are in the recordings. *Id.* They have a personal interest in the recordings that those not depicted or heard in them do not share. Yet it does not follow that the General Assembly wished to foreclose the use of petitions by those seeking release pursuant to subsection (g). On the contrary, major similarities between the two subsections reflect a legislative intent that proceedings under both follow substantially the same procedures.

Both subsection (f) and subsection (g) require the trial court to schedule a hearing on a CLEAR request "as soon as practicable." N.C.G.S. § 132-1.4A(f)–(g). Both subsections also mandate that subsequent proceedings "be accorded priority" in the trial court. *Id.* Notably, subsection (g) goes further than subsection (f) in this regard, directing not just trial courts but also appellate courts to prioritize cases arising under its provisions. N.C.G.S. § 132-1.4A(g). Thus, the General Assembly has manifested a strong desire that the judiciary expeditiously resolve requests for release under either subsection.

Release requests are subject to the same content requirements under both subsections. A request must "state the date and approximate time of the activity captured in the recording, or otherwise identify the activity with reasonable particularity sufficient to identify the recording." N.C.G.S. § 132-1.4A(f)–(g).

Additionally, the decision-making process is nearly identical under both subsections. Regardless of which subsection a requester invokes, the trial court may review the requested CLEAR in chambers prior to making its decision. *Id.* Even when evaluating a subsection (f) petition, the court must "consider the standards set out in subsection (g)." N.C.G.S. § 132-1.4A(f). In other words, the same eight standards that a trial court must consider when deciding whether or to what extent to release CLEAR under subsection (g) likewise pertain to subsection (f) petitions. The scope of the trial court's release authority and ability to condition release is the same under both subsections: the court may order the release of "only those portions of the recording that are relevant to the person's request" and "may place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate." N.C.G.S. § 132-1.4A(f)–(g). Simply put, subsections (f) and (g) resemble each other in form and function more than they differ.[5]

Moreover, try as we might, we cannot reconcile the GPD's rigid interpretation of "action" with the CLEAR statute's provision on attorneys' fees. Subsection (m) reads: "The court may not award attorneys' fees to any party in any action brought

---

[5] The dissent accuses us of erasing the distinction between subsection (f) and subsection (g) by taking "the primary characteristic that makes subsection (f) expedited—the ability to initiate proceedings by petition, rather than filing a civil action—[and] writ[ing it] into subsection (g)." As we have seen, the legislature plainly intended courts to move promptly regardless of whether a CLEAR request is made under subsection (f) or subsection (g). Furthermore, we have highlighted differences between the subsections that make subsection (f) proceedings less demanding than subsection (g) proceedings, including that (1) no filing fee may be charged for a subsection (f) petition and (2) the notice and opportunity-to-be-heard requirements are less burdensome in subsection (f) proceedings.

pursuant to [the CLEAR statute]." N.C.G.S. § 132-1.4A(m). If "action" in subsection (m) does not encompass proceedings initiated by petitions, we are left with a paradox involving the applicability of subsection (m) to subsection (b3) proceedings for CLEAR depicting death or serious bodily injury. *See id.* As noted above, although a law enforcement agency must commence a subsection (b3) proceeding by "fil[ing] a petition in the superior court," subsection (b3) refers to such proceedings as "actions." N.C.G.S. § 132-1.4A(b3). The GPD's construction of "action" would leave subsection (m) inapplicable to subsection (b3) because subsection (b3) requires the filing of a petition. However, subsection (m) must apply to subsection (b3) proceedings because subsection (m) applies to "any action" under the CLEAR statute and proceedings brought under subsection (b3) are actions. *See id.* Since we see no obvious reason why the legislature would want to allow attorneys' fees in certain kinds of CLEAR proceedings but not others, we choose not to create the paradox that would result from endorsing the GPD's position.

The General Assembly intended for trial courts to conduct subsection (f) and subsection (g) proceedings expeditiously and along roughly the same lines. Allowing parties to file petitions to request the release of CLEAR under subsection (g) advances this legislative purpose. The legislature's generic use of "action" in subsection (g) does not dictate a different conclusion. We therefore reject the GPD's contention that the trial court lacked subject matter jurisdiction over petitioners' release request because petitioners filed a petition instead of a complaint.

### III.    Compliance with the CLEAR Statute

Having disposed of the GPD's jurisdictional argument, we now take up the points of disagreement between the majority and the dissent in the Court of Appeals: (1) whether the trial court erred by not addressing petitioners' eligibility to seek the release of CLEAR, and (2) whether the trial court abused its discretion in granting the petition.[6]

### A. Eligibility to Initiate Subsection (g) Proceedings

We disagree with the conclusion of the Court of Appeals majority that the trial court erred by granting the petition without first finding that petitioners were eligible to seek the release of the recordings described therein. *McClatchy*, 287 N.C. App. at 134. According to the majority, the trial court had to make such a finding because the CLEAR statute prohibits anyone who is not covered by subsection (c) of the statute from obtaining the release of CLEAR. *Id.*

"We review a lower court's interpretation of statutes *de novo.*" *Morris v. Rodeberg*, 385 N.C. 405, 409 (2023) (citing *DTH Media Corp. v. Folt*, 374 N.C. 292,

---

[6] The GPD's brief to this Court includes an argument that the petition violates subsection (g) of the CLEAR statute because it fails to "identify a specific event or occurrence for which [petitioners] sought the recordings." *See* N.C.G.S. § 132-1.4A(g) ("The request for release must state the date and approximate time of the activity captured in the recording, or otherwise identify the activity with reasonable particularity sufficient to identify the recording to which the action refers."). There was no disagreement between the majority and the dissenting judge at the Court of Appeals on this matter. Accordingly, it is not properly before this Court. *See State v. McKoy*, 385 N.C. 88, 94 (2023) ("When a case comes to us under N.C.G.S. § 7A-30(2) based solely on a dissent in the Court of Appeals, the scope of review is limited to those questions on which there was division in the intermediate appellate court." (internal quotation marks and citation omitted)).

299 (2020)); *see also State v. Fritsche*, 385 N.C. 446, 449 (2023) ("Conclusions of law, such as issues of statutory interpretation, are reviewed de novo by this Court and are subject to full review.").

The Court of Appeals majority misread subsections (c), (f), and (g) of the CLEAR statute. As explained above, subsection (c) addresses the disclosure—not the release—of CLEAR. N.C.G.S. § 132-1.4A(c). While it is true that only individuals who qualify for disclosure under subsection (c) may pursue the release of CLEAR through a subsection (f) proceeding, subsection (f) provides that, "[i]f the court determines that the person [who filed a subsection (f) petition] is not authorized to receive disclosure pursuant to subsection (c)[,] . . . the petitioner may file an action for release pursuant to subsection (g) of this section." N.C.G.S. § 132-1.4A(f). Thus, subsection (f) explicitly acknowledges that persons who do not qualify for disclosure under subsection (c) may initiate subsection (g) proceedings. *Id.* Any lingering doubt on this subject is extinguished by the text of subsection (g), which authorizes "any person" who requests release thereunder to "file an action in the superior court . . . for an order releasing the recording." N.C.G.S. § 132-1.4A(g).

In short, persons eligible for disclosure under subsection (c) may seek release through a subsection (f) proceeding. Anyone else who desires the release of CLEAR must do so in the form of a subsection (g) proceeding. In holding that the CLEAR statute restricts the release of CLEAR to individuals eligible for disclosure under

subsection (c), the Court of Appeals majority inexplicably read subsection (g) right out of the statute.

Petitioners checked the box on their petition indicating that they were requesting CLEAR in accordance with subsection (g). Since anyone is entitled to make such a request through a subsection (g) proceeding, the Court of Appeals majority erred in ordering this case remanded for findings as to petitioners' eligibility under subsection (c).

## B. Trial Court Discretion in Subsection (g) Proceedings

We agree with the Court of Appeals majority that the trial court misunderstood the scope of its authority when it ordered the unredacted release of all recordings requested by petitioners. Trial court orders granting or denying release requests under the CLEAR statute are reviewed for abuse of discretion. *See In re Custodial L. Enf't Recording Sought by Greensboro*, 383 N.C. 261, 268 (2022) ("[O]rders imposing or denying relief from restrictions on the release of body camera videos are reviewed for abuse of discretion."). An abuse of discretion occurs when a trial court's ruling is so arbitrary that it cannot be the result of a reasoned decision. *State v. Hayes*, 314 N.C. 460, 471 (1985). "A trial court also abuses its discretion when it makes an error of law." *Greensboro*, 383 N.C. at 268 (citing *Da Silva v. WakeMed*, 375 N.C. 1, 5 n.2 (2020)).

As required by the CLEAR statute, the trial court considered the eight subsection (g) standards. The court determined that some standards weighed in favor

of release, namely: standard (1) (release was necessary to advance a compelling public interest), standard (6) (release would not create a serious threat to the administration of justice), and standard (8) (good cause was shown for release). The court found that other standards weighed against release: standard (4) (release would reveal highly sensitive personal information) and standard (5) (release would threaten a person's reputation or safety). The court deemed the remaining standards irrelevant to its ruling.

Up to this point, the trial court's analysis seems to have tracked the CLEAR statute. The court departed from the statutory scheme, however, when it announced from the bench on 10 July 2021 that it "d[id] not have the authority to [c]ensor this information absent a legitimate or compelling state interest [ ] to do so." According to the trial court's written order of 15 June 2021, not even a legitimate state interest could support the full or partial denial of the petition. The court wrote that it "d[id] not have the authority to censor the photos/recordings absent a compelling governmental interest and none was shown." The trial court's statements on the limits of its authority constitute reversible error.

We noted earlier that Chapter 132 of the General Statutes contains the public records law. Under the public records law, "if an item meets the definition of public record [in N.C.G.S. § 132-1], the [records] custodian must allow public inspection unless the custodian can point to some North Carolina (or federal) statute that permits or requires denial of public access." David M. Lawrence, *Public Records Law*

*for North Carolina Local Governments* 4–5 (2d ed. 2009).

The CLEAR statute expressly declares that CLEAR "are not public records as defined by [N.C.G.S. §] 132-1." N.C.G.S. § 132-1.4A(b). Thus, the right of public access created by the public records law does not extend to CLEAR. Moreover, nothing in subsection (f), subsection (g), or any other part of the CLEAR statute creates a presumption in favor of granting release requests. The burden rests on the requester to make the case for release.[7] Likewise, neither subsection tells a trial court how much importance to attach to each of the eight standards listed in subsection (g). A trial court must determine in its sound discretion what weight to assign to which standards based on the facts of a particular case.

This discretion does not end when a trial court concludes that subsection (g) standards and other relevant standards, if any, weigh in favor of granting a request for the release of CLEAR. In fashioning its order granting such a request, a trial court "may place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate." N.C.G.S. § 132-1.4A(g).

Here the trial court failed to grasp its broad discretion under the CLEAR statute. Even if we assume for the sake of argument that it adhered to subsection (g) in deciding to grant the petition, the court did not appreciate that it could condition

---

[7] In their brief to this Court, petitioners argue that they have a right to access the recordings under the First Amendment to the United States Constitution. Inasmuch as neither the majority opinion nor the dissent in the Court of Appeals addresses this argument, we lack jurisdiction over the issue. *McKoy*, 385 N.C. at 94.

or restrict the release of the contested recordings. But for this misunderstanding, the trial court might have ordered redactions to or limited the release of the recordings, especially given its findings that releasing them would reveal highly sensitive personal information and could threaten a person's reputation or safety. Because the trial court premised its 15 June 2021 order on an error of law, that order amounts to an abuse of discretion. *Greensboro*, 383 N.C. at 268.

### IV.    Conclusion

Subsection (g) of the CLEAR statute did not mandate that petitioners file a civil action rather than a petition. Contrary to the decision of the Court of Appeals, the CLEAR statute also did not condition petitioners' ability to request the disputed recordings on petitioners' eligibility for disclosure under subsection (c). Nonetheless, the Court of Appeals correctly held that the trial court misunderstood its authority to place conditions or restrictions on the release of the recordings. We affirm in part and reverse in part the decision of the Court of Appeals and remand this case for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

Justice BERGER dissenting.

While I take no issue with the majority's analysis of the trial court's shortcomings regarding N.C.G.S. § 132-1.4A, those issues should not have been reached because appellants' filing of a petition failed to invoke the trial court's subject matter jurisdiction. The majority has, under the guise of statutory construction, improperly amended N.C.G.S. § 132-1.4A(g) to allow for the initiation of proceedings by the filing of the petition mentioned in subsection (f) of the statute. But the statute is clear—two distinct processes exist—one for those that the legislature deemed presumptively authorized to receive the video evidence and another for those who are not so authorized. N.C.G.S. § 132-1.4A(c), (f)–(g) (2023). Thus, N.C.G.S. § 132-1.4A(f) and (g) clearly and unambiguously establish separate mechanisms for obtaining video evidence from law enforcement, yet the majority eliminates these distinctions by reading ambiguity into a statute where none exists.

In doing so, the majority blurs the lines set out in our rules of civil procedure: "A civil action is commenced by filing a complaint . . . ." N.C.G.S. § 1A-1, Rule 3(a). Here, appellants did not file a complaint to initiate the "action" under subsection (g), but instead filed the petition set out in subsection (f). But "[w]ithout a proper complaint or summons under Rule 3 of the Rules of Civil Procedure, an *action* is not properly instituted and the court does not have jurisdiction." *Est. of Livesay ex rel. Morley v. Livesay*, 219 N.C. App. 183, 185 (2012) (emphasis added) (citing *Boyd v.*

*Boyd*, 61 N.C. App. 334, 336 (1983)). Thus, appellants' filing of a petition, rather than a complaint as required by Rule 3(a), failed to initiate an action under subsection (g). N.C.G.S. § 132-1.4A(g); *id.* § 1A-1, Rule 3. Because appellants failed to file a complaint necessary to properly institute an action as required by subsection (g), the trial court lacked subject matter jurisdiction over appellants' petition.

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (cleaned up).

It is important to note that the recordings at issue in N.C.G.S. § 132-1.4A are not public records. Thus, there is a presumption against disclosure and release. However, the legislature has established a process by which these recordings, which can contain evidence of criminal activity and police activity or tactics, may be released in the trial court's discretion. In searching for legislative intent beyond the statute's plain language, the majority declines to acknowledge or even address the potential release of *evidence* prior to trial. The majority's shortsighted approach could expand pretrial publicity and increase the likelihood that potential jurors are exposed to information that is better viewed fully in adversarial proceedings where the rules of evidence apply, rather than dissected and left on editing room floors. The differing requirements in subsections (f) and (g) aid in maintaining the integrity of criminal

proceedings, or at least they did, and the majority seems more interested in performing statutory mental gymnastics to support their definition of "action" rather than addressing practical realities.

Regardless, subsection (f) provides an "Expedited Process" for release of evidence to the custodial law enforcement agency and various individuals "whose image or voice is in the recording" or their personal representative. N.C.G.S. § 132-1.4A(c), (f). This expedited process provides for the filing of a petition in superior court to obtain release of the recording. *Id.* § 132-1.4A(f). No filing fee is required and the only notice necessary is to the "head of the custodial law enforcement agency." *Id.*

At a hearing on the petition, the trial court first determines if the petitioner is an authorized recipient of the disclosure, i.e., someone "whose image or voice is in the recording" or their personal representative. *Id.* § 132-1.4A(c), (f). When the court needs assistance in making this determination, the judge may "allow the *petitioner* to be present to assist in identifying the image or voice in the recording." *Id.* § 132-1.4A(f) (emphasis added). If the petitioner is entitled to disclosure, the trial court considers whether to release all or portions of the video recording pursuant to standards set forth in subsection (g) and "any other standards the court deems relevant." *Id.* This is a highly deferential standard; so much so that where a petitioner is not entitled to disclosure of the recording, there is no right of appeal. *Id.* The petitioner's only recourse is to "file *an action* for release pursuant to subsection

(g) of this section." *Id.* (emphasis added).

By contrast, there is a more formal general process by which others not covered in subsection (f) may request the recording. Subsection (g) requires such persons to "file an action . . . for an order releasing the recording." *Id.* § 132-1.4A(g). This subsection sets forth a provision for notice and an opportunity to be heard by heads of affected law enforcement agencies, law enforcement personnel, and the district attorney. *Id.*

As a general proposition, the law treats the word "action" as a term of art. Specifically, our General Statutes generally define an "action" as "an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." N.C.G.S. § 1-2 (2023). There is "but one form of action for the enforcement or protection of private rights or the redress of private wrongs": the civil action. *Id.* § 1A-1, Rule 2 (2023). In contrast, "[e]very other remedy is a special proceeding." *Id.* § 1-3 (2023); *see generally id.* § 1-1 (2023) ("Remedies in the courts of justice are divided into—(1) Actions. (2) Special Proceedings."). Because "it is always presumed that the Legislature acted with full knowledge of prior and existing law," *Ridge Cmty. Invs., Inc. v. Berry*, 293 N.C. 688, 695 (1977), this Court presumes that the General Assembly intended for the word "action" in subsection 132-1.4A(g) to carry its established definition. Accordingly, a party proceeding pursuant to subsection 132-1.4A(g) is participating in an

adversarial action.

The use of separate sections, distinct language, and different notice provisions creates a substantially more formal process for those seeking disclosure under subsection (g), certainly more accustomed to our common understanding of a civil action. There exists a clear scheme by the legislature under which the processes for filing a petition and filing an action are different.[1]  N.C.G.S. § 132-1.4A(f)–(g). Because this "statutory language is unambiguous and the statutory scheme is coherent and consistent," s*ee Robinson*, 519 U.S. at 340 (cleaned up), our inquiry must cease and the statute must be read as written; that is, to require a petition for parties who appear in the recordings and an action for those who do not.

Despite acknowledging that, "[o]rdinarily, in the civil context, the term 'action' is synonymous with 'civil action' and 'is commenced by filing a complaint with the court,' " the majority relies on subsections (b1), (b3), and (m) of the statute, the

---

[1] Contrary to the majority's assertion that the legislature was simply inartful in its wording, the legislative history demonstrates that the use of these distinct terms was no accident—it was an intentional act requiring nonauthorized parties to pass through the crucible of adversarial proceedings while relieving authorized parties of formalistic burdens. The first legislative drafts of 2015 House Bill 972 addressing release to nonauthorized parties required such parties to "file an action" in superior court. *See* Drafts of H.B. 972, 2015 Gen. Assemb., at 3 (N.C. June 8, 2016; June 23, 2016; June 27, 2016; June 28, 2016). Only in the seventh draft of the bill—introduced the day after the sixth draft—did the expedited release subsection appear, specifically providing that parties authorized to receive disclosure may *petition* the superior court for release. *See* Draft of H.B. 972, 2015 Gen. Assemb., at 3 (N.C. June 29, 2016). Thus, the general, non-expedited process for release to nonauthorized parties was the default process, and the expedited process for release to authorized parties was an exception deliberately inserted. According to the majority's reasoning, however, the legislature intended for these processes to be identical and the use of the word "petition" rather than "action" was simply an accidental bit of loose language.

Juvenile Code, N.C.G.S. § 132-5.1, and this Court's inapposite precedent to support its determination that the word "action" in this context is ambiguous.

But each of the majority's examples is unpersuasive because the Rules of Civil Procedure allow for the General Assembly to provide for different procedures when it so desires. *See* N.C.G.S. § 1A-1, Rule 1. Thus, even though proceedings pursuant to subsections (b1) through (b3) are denominated "actions," despite being commenced by petitions, *see id.* § 132-1.4A(b1)–(b3), the General Assembly simply chose to provide a different procedure for proceedings pursuant to subsections (b1) though (b3). The same is true of section 132-5.1 and the Juvenile Code. *See id.* § 7B-405 (2023) ("An action is commenced by the filing of a petition in the clerk's office . . . ."); *id.* § 132-5.1(b) (2023) ("At any time after filing the petition set out in subsection (a) . . . [the public official may request] the court in which the action was filed to grant one of the following provisional remedies: . . . ."). Accordingly, these examples do not inform whether an action pursuant to subsection (g) may be commenced by filing a petition.

The majority transforms the coherent and consistent scheme carefully carved out by the legislature into one rife with inconsistency by mandating that the procedure to initiate proceedings for the release of evidence may take the same form under subsections (f) and (g). The majority renders the plainly evident scheme in section 132-1.4A of establishing a less formal process for parties implicated in the recordings into an incoherent and redundant hodgepodge in which the plain language of the statute is lost, and the legislative intent with it. All the while, the majority

neglects to consider that if the legislature had intended both "subsection (f) and subsection (g) proceedings [to be conducted] expeditiously and along roughly the same lines," then it would have said so and it certainly would not have written them as two distinct subsections with separate language. Moreover, it would not have created a specific petition form for use under subsection (f) and not subsection (g).

Further, the majority eludes obvious questions to its construction of N.C.G.S. § 132-1.4A: if a petition and an action are to be read synonymously in this statute, can the remedial action in subsection (f) also be initiated through a petition? Why would the legislature differentiate the two in that subsection? What is the purpose of subsection (f)'s remedy if filing a petition is the same as filing an action? *See id.* § 132-1.4A(f)–(g). The majority's statutory construction renders subsection (f)'s remedy meaningless and creates the possibility that the denial of a petition under subsection (f) would presumably be reviewed by returning to the courthouse and filing the same petition. *See id.* If so, what role would issue or claim preclusion play in this discussion? Because the majority's construction would nullify subsection (f)'s remedy of filing a separate action where a petition is denied, and because we "presume that the General Assembly would not contradict itself in the same statute" by potentially barring its remedy by claim preclusion, *State v. James*, 371 N.C. 77, 85 (2018) (cleaned up), the majority's construction of the statute cannot be correct.

Lastly, the natural reading of the statute lends itself to the conclusion that proceedings under subsection (f), the "Expedited Process," should be more expeditious

than filing an action under subsection (g), the "General; Court Order Required" process. *See* N.C.G.S. § 132-1.4A(f)–(g). The presumption against ineffectiveness "reflects the idea that [the legislature] presumably does not enact useless laws. In other words, when the plain meaning of a provision is not clear, we should avoid interpretations that render the provision a 'dead letter.' " *In re Davis*, 960 F.3d 346, 354 (6th Cir. 2020) (cleaned up).

But under the majority's construction, the primary characteristic that makes subsection (f) expedited—the ability to initiate proceedings by petition, rather than filing a civil action—is now written into subsection (g).[2] *See* N.C.G.S. § 132-1.4A(f)–(g). Subsection (f)'s "Expedited Process" may be initiated by a petition, requires a finding that the petitioner is a person to whom disclosure is authorized under subsection (c), and requires the court to weigh the eight standards set out in subsection (g). *Id.* § 132-1.4A(f)–(g). In the majority's view, subsection (g)—what the legislature intended as the non-"Expedited Process"—may now also be initiated by a petition, rather than a civil action, and requires the court to weigh the same eight standards, bypassing the burdensome and adversarial civil action originally contemplated by the legislature. *Id.* § 132-1.4A(g). This begs the question, besides notice requirements, what is left to make subsection (f) more expedited in comparison? The two subsections become all but indistinguishable, and the primary reason to proceed under subsection (f)—the ability to initiate proceedings by petition,

---

[2] The majority's argument in fn. 5 bolsters this point.

rather than filing a civil action—is lost, thus rendering subsection (f) "useless" and the legislature's demarcation of it as the "Expedited Process" a "dead letter." *In re Davis*, 960 F.3d at 354 (cleaned up); N.C.G.S. § 132-1.4A(f).

In the majority's view, any individual, activist group, or media organization may now initiate proceedings to obtain evidence via the special expedited process clearly reserved by the legislature for subsection (f) related parties. Not only does the majority opinion disturb three recent well-reasoned and consistent Court of Appeals opinions, it conflicts with the obvious intent of the statutory scheme enacted by the legislature. *See In re Custodial L. Enf't Agency Recording*, 288 N.C. App. 306 (2023); *In re Custodial L. Enf't Agency Recordings*, 287 N.C. App. 566 (2023); *In re The McClatchy Co.*, 287 N.C. App. 126 (2022). Conflating the procedures for presumptively authorized parties under subsection (f) and presumptively unauthorized parties under subsection (g) disregards the plain language of these subsections and "contravene[s] the manifest purpose of the Legislature," *State v. Beck*, 359 N.C. 611, 614 (2005), to make the process of requesting and obtaining evidence easier on parties described in subsection (c).

The majority overlooks clear differences between the subsections. When the General Assembly indicated that it wanted a proceeding to be commenced by filing a petition, it was very clear. *See* N.C.G.S. § 132-1.4A(b3) ("[A] law enforcement agency shall file a petition in the superior court . . . ."); *id.* § 132-1.4A(f) ("Notwithstanding the provisions of subsection (g) of this section, a person authorized to receive

disclosure pursuant to subsection (c) of this section, or the custodial law enforcement agency, may petition the superior court in any county where any portion of the recording was made for an order releasing the recording . . . ."). If the General Assembly had intended for proceedings pursuant to subsection (g) to be done the exact same way, why did it not follow the same formula as the preceding examples? The difference has to mean something.

But the majority uses every subsection of the statute except the ones actually at issue here to read ambiguity into the plain words of section 132-1.4A, thereby undermining the legislature's role and responsibility. The statute denominates proceedings pursuant to subsection (g) as "actions," and it does not imply or suggest that an action pursuant subsection (g) may be initiated by a petition. This Court is constrained to conclude that the General Assembly intended for persons proceeding pursuant to subsection 132-1.4A(g) to file a civil action, not a petition. Because petitioners did not do so here, the lower court lacked jurisdiction, and I respectfully dissent.

Chief Justice NEWBY joins in this dissenting opinion.